[No. 10,114.]

## EX PARTE AH FOOK.

CONSTRUCTION OF SEVENTIETH SECTION OF POLITICAL CODE.—The seventieth section of the amendments to the Political Code makes it the duty of the Commissioner of Immigration to satisfy himself whether passengers from a foreign country, arriving on a vessel in San Francisco, are included in one of the classes specified in the section, and to prevent those that are included in one of the classes, from landing, unless the master, owner, or consignee, shall give the bond mentioned.

ACT PROHIBITING LEWD WOMEN FROM LANDING IN THE STATE—TREATY WITH CHINA.—The Statute of California, which requires the Commissioner of Immigration, when a vessel from a foreign port or place arrives, to ascertain whether there are among the passengers, lewd or debauched women, and when such persons are found, to prevent them from landing, unless the master, owner, or consignee, shall give the bond required in the statute, does not contravene the clause in the treaty with China, which declares that " Chinese subjects, visiting or residing in the United States, shall enjoy the same privileges, immunities and exemptions, in respect to travel or residence, as may be enjoyed by the citizens or subjects of the most favored nation."

IDEM.—The " Chinese subjects," referred to in the treaty, are those traveling for instruction, or from curiosity, or engaging in some legitimate avocation, and whose ingress may not lawfully be prohibited by reason of some objection personal to themselves, and not dependent upon their nationality.

RIGHT OF A STATE TO PREVENT LEWD WOMEN FROM LANDING IN ITS PORTS.— The clause in the Fourteenth Amendment to the Constitution of the United States, which prohibits a State from depriving " any person of life, liberty or property without due process of law," does not prevent a State by statute from empowering a Commissioner of Immigration to visit vessels arriving in its harbors from a foreign port, and to ascertain and

determine, finally, whether there are lewd and debauched women among the passengers, and if such are found, to prevent them from landing, unless bonds are given to indemnify the State against expenses which may be incurred by reason of their infirmities or vices.

IDEM.—The fact that the judgment of the Commissioner is final, as to who are lewd and abandoned women, does not deprive such persons of "due process of law."

DUE PROCESS OF LAW.—Due process of law, in each particular case, means such an exertion of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.

THE steamer Japan sailed from the port of Hongkong, in China, and arrived at the port of San Francisco, in California, on the 24th day of August, 1864. By the statute of the State, a Commissioner of Immigration was appointed for each port within the State, and it was made his duty to visit each vessel arriving from a foreign port, and ascertain whether there were among the passengers persons, not citizens of the United States, who were lunatic, idiotic, deaf, dumb, blind, crippled, infirm, or paupers likely to become a public charge, or convicted criminals, or lewd or debauched women, and if the Commissioner ascertained that any such persons were on board, he was directed to prevent them from landing, unless the owner, agent or consignee of the vessel gave bonds conditioned to indemnify and save harmless every town, county and city of the State, from any expenses resulting from their infirmities or vices. The master of the vessel was required to pay the Commissioner seventy cents for every passenger examined by him, and the sum was made a lien on the vessel, and if the Commissioner found any persons of foreign birth above described, and the owner, agent or consignee of the vessel failed to execute the bond, such persons were to be detained on the vessel and conveyed, when it sailed, from the State.

When said steamer arrived at San Francisco, the Commissioner of Immigration for that port made examination, and decided that he had ascertained that there were several lewd and abandoned Chinese women on board, passengers from China, who were not citizens of the United States, and detained them on the steamer on the failure of the owner,

agent, or consignee, to give the required bond. Ah Fook, one of the detained females, applied to the Supreme Court to be discharged on *habeas corpus*.

The other facts are stated in the opinion.

*McAllisters & Bergin*, for the Petitioner.

*Attorney-General Love*, contra.

By the Court, McKinstry, J.:

In response to the writ to him directed, the master of the steamship Japan, returns that on the arrival of the ship in the harbor of San Francisco, she was boarded by the Commissioner of Immigration, who examined the persons named in the writ—who are Chinese women, and were passengers—and, on such examination, declared them to be lewd, debauched and abandoned women, and thereupon refused to permit them to land.

The Commissioner justifies by reference to Section 70 of the Amendments to the Political Code.

Whatever the grammatical errors found in the section, we think the meaning of the Legislature is made sufficiently apparent by the language employed.

It is made the duty of the Commissioner to satisfy himself that passengers are or are not included in any of the classes specified in the statute, and to prevent from landing those by him determined to belong to such classes, unless the master, owner or consignee of the vessel shall give the bond mentioned.

On the argument it was admitted that the statute—thus construed—is valid and effective, unless—1. It contravenes the stipulations of the treaty between the United States and the Empire of China, concluded at Washington on the 28th of July 1868, and commonly cited as the "Burlingame Treaty;" or unless—2. It is in conflict with that portion of the Fourteenth Amendment of the Constitution of the United States which provides that no State "shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

1. The only portion of the treaty which can be supposed to limit the power of State legislation upon the subject is the Sixth Article. This article (in language similar to that which will be found perhaps in every original treaty between the United States and a foreign power), provides: "Chinese subjects visiting or residing in the United States shall enjoy the same privileges, immunities, and exemptions, in respect to travel or residence, as may be enjoyed by the citizens or subjects of the most favored nation."

If, in the exercise of its power, the State can exclude the persons mentioned in the statute, or require on their behalf security that they will not become a public charge, the treaty is not violated; since the Act of the Legislature, by its terms, applies to all passengers arriving from foreign ports, and is not made applicable to Chinese subjects alone. Whether the power to exclude resides in the Federal or State Government, the treaty is not contravened unless a discrimination is made against the subjects of the Ta-Tsing Empire.

The language of the treaty does not compel us to hold that such legislation as that complained of was intended to be prohibited; assuming, for the purposes of this case, that it could be prohibited by treaty. The subjects of China "visiting or residing in the United States" are those traveling for instruction, or from curiosity, or engaging in some legitimate avocation, and whose ingress may not lawfully be prohibited by reason of some objection personal to themselves, and not dependent upon their nationality. Otherwise, we should be prohibited from excluding criminals or paupers—a power recognized by all the writers as existing in every independent State. We can but think, that to give to the general language of the treaty a construction which would deprive both the State and United States Government of this power of self-protection would be a departure from the evident meaning and purpose of the high contracting parties.

2. The question as to the power of the Legislature to authorize the Commissioner of Immigration to determine whether particular individuals come within the prohibitions

of the statute, is not essentially affected by the Fourteenth Amendment. A clause, substantially the same as that contained in the amendment, is found in the Constitution of California, and in the constitutions of all of the several States. It is a distinct provision from that which protects the right of trial by jury, and is usually declared as an alternative, as in *Magna Charta*—"*Nisi per legale judicium parium suorum, vel per legem terrae.*" It would be difficult, perhaps impossible, to find in the reports a definition of the terms "law of the land," or "due process of law," which is accurate, complete, and appropriate under all circumstances. The peculiar necessities which call for the action of an officer, and whether a power was exercised in the same manner prior to the adoption of the Constitution, without being regarded a violation of the principles of *Magna Charta*, may be considered; and if it be found that like proceedings have always been recognized as constitutional in England and this country, and if the person who is subjected to them is accorded every reasonable opportunity to defend his individual rights which the nature of the case will admit—the case being one in which the end sought to be attained is lawful—a statute cannot be said to deprive a party of the benefits of due process of law.

Mr. Justice COOLEY (Cons. Lims. 356) says: "Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs."

It is obvious that to render effectual an inquiry which has for its purpose the carrying into operation of quarantine or health laws it must be prompt and summary, and we are not aware that any reasonable provisions of a statute clothing such officers or boards with the enlarged powers often exercised by them, has ever been held unconstitutional.

If the power to exclude such persons as are named in the seventieth section of the amendments to the Political Code exists at all, it is of the same nature as the power which isolates those ill of contagious diseases, or those who have

been in contact with such, or the power to prohibit the introduction of criminals or paupers.   These powers are employed, not to punish for offenses committed without our borders, but to prevent the entrance of elements dangerous to the health and moral well-being of the community.   If the power is to be exercised so as to accomplish the object sought to be attained, those coming here must be met at the threshhold by some official authorized to determine whether any of them belong to the classes who are not entitled to enter unconditionally.   The law appoints the Commissioner of Immigration to that duty, and we cannot see why his judgment should not be decisive.

But whether his determination of the question of fact is or is not conclusive, the evidence satisfies us that in the present cases it was correct.

These persons must be remanded.   Counsel will prepare their proper order.

Mr. Justice RHODES did not express an opinion.