71  263|
c111 269|

[No. 20221.   In Bank. — November 4, 1886.]

## THE PEOPLE, Respondent, *v.* JOHN W. STOKES, Appellant.

Adultery — Prosecution for — Evidence of Marriage — Certificate. — The act of 1871–72, providing that in a prosecution for adultery the marriage of the defendant may be proved by the record of the marriage certificate, does not exclude other evidence in proof of the marriage.

Id. — Evidence to Identify Persons Named in Certificate. — On the trial of one John W. Stokes for adultery, the prosecution offered in evidence the record of a marriage certificate, showing that at a designated time and place one John Stokes and Rebecca Gibson were united in marriage by the minister making the certificate. A witness subsequently testified that at the time and place mentioned in the certificate he was present when a marriage was celebrated by the minister named therein between the defendant and one Rachael Gibson. Evidence was also given that the defendant and Rachael Gibson had lived together avowedly as man and wife for many years. *Held*, that the evidence was admissible as tending to identify the defendant and Rachael Gibson as the persons mentioned in the certificate.

Id. — Real Names of Parties may be Shown. — In such a case, evidence that the real names of the parties married differed from the names given in the certificate is admissible, as the minister or other person authorized to perform the marriage ceremony is not required to guarantee that the parties were married by their true names.

Id. — Presumption of Subsisting Marriage. — In such a prosecution, after the marriage has been proved, its continuance is presumed until a dissolution by death or divorce is affirmatively shown.

Appeal from a judgment of the Superior Court of Tulare County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Atwell & Bradley*, for Appellant.

*Attorney-General Marshall*, for Respondent.

McKinstry, J. — The defendant was found guilty of the misdemeanor defined in the first section of " An act to punish adultery," which reads: " Every person who lives in a state of open and notorious cohabitation and adultery is guilty of a misdemeanor, and is punishable," etc.   (Stats. 1871–72, p. 380.)

The third section of the act provides: " A recorded certificate of marriage, or a certified copy thereof, there being no decree of divorce, proves the marriage of a person for the purposes of this act."

At the trial the prosecution called the county recorder of Tulare, the custodian of the records, who read from his records as follows: —

" John Stokes to Rebecca Gibson. This certifies that on the twenty-second day of May, in the year of our Lord 1859, John Stokes of Tulare County, California, and Rebecca Gibson of the same county and state, were by me united in marriage at the school-house in the Persian district, in the said county, according to the laws of California and the customs of the church to which I belong. E. B. Lockley, Methodist Preacher. Filed for record June 18, 1859, at 10, A. M., and recorded same day at 2 o'clock, P. M.      E. E. CALHOUN, Recorder."

To the record the defendant objected that it was irrelevant, immaterial, and incompetent, because it did not appear that the John Stokes married was the defendant. When the objection was made, the district attorney said: "We propose to follow this up with proof that the John Stokes mentioned in this record is the person mentioned in the indictment as John W. Stokes," and thereupon the objection was overruled.

The prosecution subsequently called a witness, who testified that in the year 1859 he was present in the "Persian school-house" when a marriage was celebrated by a Methodist preacher named Lockley, between the defendant and *Rachael* Gibson. This of itself was evidence of the defendant's marriage; the statute does not exclude all evidence of marriage other than the record of the certificate. If it be suggested that the jury may have disbelieved the witness, and relied on the record of the certificate as proof of the marriage, still the testimony of the witness was admissible as tending to identify the parties. named in the certificate.

There was also evidence that the defendant and Rachael lived together, avowedly as man and wife, for many years. Under our law that would be evidence of a marriage in prosecution for bigamy. (Pen. Code, sec. 1106.) Even if it should be conceded that in this action it would not be evidence of marriage, it was evidence tending to identify the defendant and Rachael Gibson as the persons mentioned in the certificate.

It is said the record of a marriage between *John* Stokes and *Rebecca* Gibson was contradicted by evidence tending to prove that *John W.* Stokes was married to *Rachael* or *Rachael M.* Gibson. Counsel argue that in a criminal case, the jury "could not infer" against the defendant that Rachael M. Gibson was the person referred to in the certificate. But the jury were not left to infer the identity of the persons from the bald fact of identity in their surnames. There was evidence tending to prove that John W. Stokes and Rachael M. Gibson were the very persons married by the Methodist preacher, Mr. Lockley, in the Persian school district, in the year 1859, and other evidence tending to prove that John W. and Rachael M. were the persons mentioned in the certificate of record by the names John and Rebecca. The marriage was a valid marriage, even if the parties gave the wrong names to the preacher, or the latter mistook the names. Men and women are conjoined in matrimony, and a defendant charged with bigamy or adultery cannot in this country base a defense on the ground that he or his wife was married under an assumed name, not his or her real name. In such case evidence of the real names does not *contradict* the certificate, since the minister or other person authorized to perform the marriage ceremony is not required to guarantee the fact that the persons married were married in their true names. Certainly the omission of a *middle* name or initial does not invalidate the marriage nor detract from the effect of the recorded certificate.

At common law, in cases of alleged bigamy, proof of an actual marriage, or at least an admission of former marriage, was ordinarily required. The presumption of a marriage (in favor of morality), arising in civil causes, from open and avowed cohabitation as man and wife, was overcome in cases where the person was charged with the crime of bigamy by the counter-presumption of defendant's innocence. If the common-law rule obtain in prosecutions like the present, still evidence that the defendant and Rachael M. lived together for twenty years as man and wife, and that she bore children to him, tended to identify John W. and Rachael M. as the persons mentioned in the certificate by the names of John Stokes and Rebecca Gibson.

It is said that the prosecution, relying on the statutory evidence of the marriage, should have proved that the parties had not been divorced. But the statute does not declare that a recorded certificate of marriage proves marriage only when accompanied by evidence that the parties have not been divorced. It proves that marriage, and also the continuance of the marriage, "there being no decree of divorce." Aside from the inherent difficulty of proving the negative, a decree of divorce could not affect the evidence of the fact that marriage was contracted, since marriage must precede divorce. The *status* of marriage being proved, it is presumed to continue until death or divorce. This presumption can be overcome only by proof of the dissolution of the marriage. It was incumbent on the prosecution to prove a subsisting marriage at the time of the offense charged, but the subsisting marriage was proved *prima facie* by proof that the marriage was contracted.

Appellant also claims that there is no proof the defendant's wife was living at the time of his alleged cohabitation with the woman named in the indictment. In the absence of affirmative evidence, the dissolution of the marriage is not to be presumed to have occurred,

either by divorce or by the death of one of the parties
to it.   In the latter case the presumption of death is cre-
ated by evidence that a party to the marriage has not been
heard from in seven years.   (Code Civ. Proc., sec. 1963.)
There is no presumption of *law* that life will not continue
for any period, however long.   But juries are justified
in presuming as a *fact* that a person is dead who has not
been heard of for seven years.   (Roscoe's Crim. Ev. 18.)
Under our code, the jury is bound to presume that a per-
son not heard from in seven years is dead.   But this pre-
sumption is disputable, and may, in its turn, like the
presumption of continued life, be overcome by other
evidence.   (Code Civ. Proc., sec. 1963.)

Moreover, there was affirmative evidence that the wife
was still living at the time of the trial of this action.
The witness Elizabeth Balaam testified: "She is in San
Luis Obispo County."   It would be to distort the ordi-
nary meaning of language to hold that the witness said,
or intended to say, her sister was buried in San Luis
Obispo.

The jury were justified in holding that the defendant
was a married man.   There was abundant evidence that
while married he "lived in a state of open and notori-
ous cohabitation and adultery."

Judgment and order affirmed.

SHARPSTEIN, J., McKEE, J., THORNTON, J., and MYRICK,
J., concurred.