Hon. EDGAR N. HARWOOD, }
Hon. WILLIAM H. DE WITT, } Associate Justices.

---

## FINKELSTEIN, RESPONDENT, v. FINKELSTEIN, APPELLANT.

[Submitted December 20, 1893. Decided January 2, 1894.]

MARRIAGE AND DIVORCE—*Alimony pendente lite.*—A sufficient *prima facie* showing of marriage to support an order for alimony *pendente lite* is made where the plaintiff alleged a marriage with the defendant in Russia, and the birth of five children, and the defendant, while admitting the birth of four children as their lawful issue and long cohabitation, claimed that the marriage was invalid under the laws of that country; that plaintiff had been guilty of adultery, and that he had obtained a Mosaic divorce.

SAME—*Amount of alimony.*—Although defendant claimed that a large tailoring business, which he was alleged to own, belonged to another, the undisputed fact that he was conducting such a business is a sufficient showing of his ability to pay thirty dollars a month alimony and a counsel fee of fifty dollars.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION for divorce. Plaintiff's application for alimony *pendente lite* was granted by BUCK, J. Affirmed.

*McConnell, Clayberg & Gunn,* for Appellant.

The affidavit of appellant is both evidence and a pleading in the nature of an answer, so far as the motion for alimony is concerned. The statement that the law of Russia prohibited the marriage of a minor is in the nature of a confession and avoidance. The statements that appellant was a minor, and that the person pretending to solemnize the rites of matrimony between respondent and himself was neither a magistrate, rabbi, priest, or minister, are allegations of fact, and should have been met by counter-affidavits if not true, and, in the absence of any such denial, must be taken as true. (*Collins v. Collins,* 71 N. Y. 274.) The relation of husband and wife must exist in order to warrant the granting of alimony. This needs no citation of authority. The right to support and maintenance arises only from the marital contract, hence if there is no marriage there can be no obligation to support. While it is true that where a marriage has been duly entered into, and solemnized, between parties who are incompetent at the time to make a contract of marriage, but who, after the removal of the disability, continue to cohabit together, such cohabitation will be regarded as a ratification of the previous marriage, and makes it good and valid from the beginning. This principle applies only to a case where the marriage is void for the want of ability of one, or both, of the parties to enter into the marriage contract. In such cases where the disability is removed the continued cohabitation shows that the consent has been given, or, rather, that the consent already given is ratified, and thus the marriage is made good. But where the marriage is in violation of positive law, no subsequent cohabitation or ratification can make such marriage good. The mere fact that the parties lived together as husband and wife, under a belief that the marriage was valid, does not help the case. (*Collins v. Collins,* 80 N. Y. 1; *Rose v. Rose,* 67 Mich. 619; *Goldbeck v. Goldbeck,* 18 N. J. Eq. 42.)

*F. E. Stranahan,* for Respondent.

I. A *prima facie* case of marriage *de facto,* or a cohabitation having the semblance of marriage, need only be made out

by the plaintiff to sustain the order for alimony *pendente lite*, and this *prima facie* case must be thoroughly defeated and the defense fully established by the husband, or putative husband, before he will be relieved. (*Brinkley* v. *Brinkley*, 50 N. Y. 184; 10 Am. Rep. 460; *North* v. *North*, 1 Barb. Ch. 241; 43 Am. Dec. 778; *Portsmouth* v. *Portsmouth*, 3 Addams Eccl. 63; *Smith* v. *Smith*, 1 Edw. Ch. 255; *Hammond* v. *Hammond*, Clarke Ch. 153; *Smyth* v. *Smyth*, 2 Addams Eccl. 254; *Vincent* v. *Vincent*, 17 N. Y. Supp. 497; *Lea* v. *Lea*, 104 N. C. 603; 17 Am. St. Rep. 692; 1 Bishop on Marriage and Divorce, 386, 404.)

II.  Supposing it to be admitted that the husband's version is correct, as to law and fact of the marriage in Poland, yet it will not be contended that the subsequent cohabitation was meretricious, or that the contracting parties did not do all they could to make the marriage legal, or that the disability was not removed in the state of New York, where the mutual present consent alone is necessary, and where they lived and cohabited as man and wife, and where children were born to them after the removal of the disability contended for. (1 Bishop on Marriage and Divorce, secs. 387, 970, 975, 980, 982, 985; *Starr* v. *Peck*, 1 Hill, 270; *Clayton* v. *Wardell*, 4 N. Y. 230; *Caujolle* v. *Ferrie*, 23 N. Y. 90; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Foster* v. *Hawley*, 8 Hun, 68; *Hynes* v. *McDermott*, 91 N. Y. 451; 43 Am. Rep. 677; *Peet* v. *Peet*, 52 Mich. 464.)   The only act of disaffirmance was the sending to respondent by appellant the Mosaic divorce, thirteen years after the marriage, and when he, according to his own testimony, was twenty-nine years of age.

III.  "There are practical reasons, yet not supported by much judicial authority, for holding the proofs of a fact of marriage less strict when the celebration was abroad than when in the country of the forum.   And it has been deemed that the proof of a foreign law may be more easily dispensed with in proportion as it becomes difficult.   Hence as marriage is specially favored, the courts may well relax the rules of proof when a foreign marriage is in litigation.  (1 Bishop on Marriage and Divorce, sec. 1130; *Brower* v. *Bowers*, 1

Abb. App. Dec. 214; *Phillips* v. *Gregg*, 10 Watts, 158; 36 Am. Dec. 158.

IV. The appellant admitted the marriage by swearing to it before the police magistrate; by sending his wife the Mosaic divorce; and charging her with adultery by reason of his non-access at the time she conceived her last child. "And generally in our states, since confessions to a domestic marriage are admissible, so they are to a foreign." (1 Bishop on Marriage and Divorce, sec. 1127.)

V. A merchant or other person who holds no official situation, and who is unconnected with the legal profession, cannot be heard to expound the law of a foreign country, though the judge may be satisfied that he really possesses ample knowledge on the subject. (1 Bishop on Marriage and Divorce, sec. 1123.)

DE WITT, J.—This is an action for a divorce and alimony, and to set aside an alleged fraudulent conveyance of property by defendant, in order that plaintiff may realize alimony from such property. Defendant appeals from an order of the district court awarding plaintiff alimony *pendente lite*, and counsel fees. We refer to the case of *In re Finkelstein* v. *Curtis*, 13 Mont. 425, for a statement of some of the facts.

The appellant contends, on several grounds, that the order for alimony and counsel fees should be reversed. The first, which we will examine, is that it does not sufficiently appear, as counsel urges, that the respondent is the wife of said appellant. The plaintiff's motion for alimony and counsel fees was made upon the complaint and affidavits. The plaintiff alleges in her complaint that she and the defendant were married at Pultusk, in Russian Poland, December 27, 1870, and thereby became, and ever since have been, and now are, husband and wife. She further alleges that, at divers times between the last-mentioned date and the commencement of this action, the defendant has been guilty of adultery with one Sarah Eisbert, *alias* Sarah Jones, *alias* Sarah Finkelstein, a person with whom defendant purports to have intermarried in the year 1883.

The plaintiff further alleges that there are living issue of her marriage with the defendant, five children, ranging from

twenty-one years of age to twelve years. She further alleges that she is in indigent circumstances, dependent upon her labor for the support of herself and children, and that she is in ill health, and has no property whatever.

Her daughter, Esther, twenty-one years of age, makes an affidavit in which she says that ever since she can remember, with the exception of periodical desertions of her mother by her father, he, the defendant, has lived and cohabited with her mother as his wife, and has acknowledged and introduced her to.the world at large as such. This daughter further sets forth the indigent circumstances of her mother.

In opposition to the motion, the defendant filed his own affidavit. He alleges that the relation of husband and wife has never existed between him and the plaintiff. He alleges that about the time that plaintiff says the marriage took place he and plaintiff appeared before a third person, who was not a magistrate, rabbi, priest, or minister, or any person authorized by the laws of Russia to perform a marriage ceremony, and that this third person presumed to pronounce plaintiff and defendant husband and wife. He further says that when this ceremony took place he was sixteen years of age, and that there was a law of Russia in force that no male person under the age of twenty-one years was allowed to marry, and that any such attempted marriage was absolutely void and invalid for all purposes.

Of course, one of the essential facts to plaintiff's cause of action, is that she is the wife of defendant. If that fact is not present, plaintiff has no case. But on the hearing of a motion for alimony *pendente lite*, it is not for the district court to finally determine that fact. The question is whether there is a sufficient *prima facie* showing of the alleged fact of marriage. In this case the plaintiff unequivocally alleges the fact of marriage with defendant in Russia in 1870, and that they ever since have been, and now are, husband and wife. She also alleges that there is issue of that marriage five children. The defendant admits that there are four children who are the issue of himself and plaintiff. So we have the undisputed fact of four children, and we also have the undisputed fact of a long cohabitation of plaintiff and this defendant as husband and

wife, interrupted only by defendant's periodical desertions of plaintiff. To oppose these allegations of plaintiff and these conceded facts, there is the affidavit of defendant, that the person who performed the alleged marriage ceremony in Russia was not authorized so to do by the laws of Russia, and that his alleged marriage when sixteen years of age was void and invalid under the laws of that country. The defendant contends that his affidavit in this respect must be held to be both a pleading and evidence. Taking his view, and looking at the affidavit as evidence, we have before us a statement of one not a lawyer as to what is the law of Russia. The statement of such a person is not competent testimony of what the law is in a foreign country. But appellant contends that his statement as to the law of Russia is not denied by plaintiff. We do not regard it as a matter of any consequence whether plaintiff denies it or not. She is not shown to be learned in the law and competent to testify any more than he is. Her denial would be of no more value than his asseveration. Neither of them is a witness competent upon the subject.

Turning from defendant's affidavit regarded as evidence, and looking at it as a pleading, as he requests, we observe this situation. The plaintiff alleges marriage and the present existence of the relation of husband and wife. The defendant sets up facts which he claims, if true, show that there was no marriage and no relation of husband and wife. In our opinion this leaves the matter of marriage simply in the condition of a contention between the parties. But there are some further allegations in defendant's affidavit, which instead of attacking plaintiff's claim that there was a marriage, rather lend strength to her contention. They are as follows: He says that in 1883 plaintiff and himself agreed to separate, and get a divorce in accordance with the Jewish religion and practice; that accordingly, he, the defendant, went to a rabbi in Chicago and obtained from him a divorce from the plaintiff according to the law of Moses, and that he sent the same to the plaintiff, and that she accepted and agreed to abide by it, and has abided by it for a period of ten years. So it appears that the defendant himself at that time fully recognized the relation of husband and wife between himself and the plaintiff. Again the defend-

ant, in his affidavit, in effect accuses the plaintiff of adultery, in that he says, that for more than eighteen months prior to the birth of plaintiff's last son, Emanuel, the defendant was continuously away from her in another city, and he says that he has never condoned this offense by the plaintiff. As a matter of course, she could not be guilty of adultery, as he charges in effect, unless the relation of husband and wife existed between the parties. So as above remarked, these matters set up by defendant, instead of lending aid to his contention against the marriage, have rather a tendency in the other direction.

It may be true that, if on a motion for alimony *pendente lite,* the defendant shows facts and conditions which absolutely establish that there is no marriage, and that plaintiff is not the wife of defendant, it would not be proper to grant such alimony. But there is no such showing in this case. To recapitulate, the district court had before it this situation: A direct allegation of marriage by the plaintiff, which the defendant denied, by alleging what he claimed was a law of Russia, which would render the alleged marriage void. There is the further fact of long cohabitation by plaintiff and defendant, as husband and wife, and the birth of four children as the result thereof. Again there is the action of defendant in obtaining the Mosaic divorce. Again there is the implied admission of the marriage by defendant in his charge against the plaintiff of adultery.

It is our opinion, that there was an ample *prima facie* showing upon which the district court was justified in granting the alimony and counsel fee.

Another point presented by the appellant is, that it does not appear that the defendant has the faculty and ability to pay alimony. It does appear that he is conducting a large tailoring business, and plaintiff claims that the business is, in fact, his own, and is being fraudulently conducted in the name of Sarah Finkelstein, the person defendant claims to be his wife. Defendant, on the other hand, says, that this business belongs to Sarah. But, in any event, it does appear, without contradiction, that the defendant is engaged in conducting this business, and, if he were able to do so, it is a fair showing that he has the faculty and ability to earn money to pay the mod-

erate sum allowed by the court in this case as alimony and
counsel fees. The alimony was thirty dollars a month, and
the counsel fee was fifty dollars.

There are some questions upon the statute of limitation as
to plaintiff's cause of action, raised by defendant's affidavit;
but with the substantial *prima facie* showing of a marriage,
and the charges of adultery made by the defendant against this
plaintiff, we are of opinion, that these questions as to the stat-
ute of limitations, which are simply alleged in defendant's affi-
davit, should properly be determined upon the trial of the case
upon the merits, and should not be settled in advance upon
the hearing of the application for alimony *pendente lite.*

The ruling of the district court is affirmed.

*Affirmed.*

PEMBERTON, C. J., and HARWOOD, J., concur.