[S. F. No. 1489. In Bank.—May 13, 1899.]

## LUCY HITE, Respondent, v. JOHN R. HITE, Appellant.

DIVORCE—ALIMONY—ISSUE AS TO MARRIAGE—PRIMA FACIE CASE—PRE-
PONDERANCE OF PROOF.—In an action for a divorce, where alimony
*pendente lite* is sought by the alleged wife, and the marriage is
put in issue by the alleged husband, it is not sufficient to justify
the allowance of alimony that the plaintiff should make merely
a *prima facie* case as to the existence of the marriage, regardless
of any counter-showing by the husband, but the court must be
satisfied from the preponderance of the entire evidence that the
plaintiff is the wife of the defendant, before any alimony can be
allowed.

ID.—REVIEW UPON APPEAL—ABUSE OF DISCRETION.—Where the superior
court has allowed alimony, counsel fees, and expenses of suit,
upon the theory that it is sufficient that a *prima facie* case be
made by the plaintiff, upon the issue as to the existence of the
marriage, and it is evident that the preponderance of the entire
proof presented by both parties is against the fact of marriage,
the allowance made is an abuse of discretion, and will be re-
versed upon appeal.

APPEAL from an order of the Superior Court of Mariposa
County, allowing alimony, counsel fees, and expenses of suit,
pending an action for divorce. John M. Corcoran, Judge.

The facts are stated in the opinions.

W. W. Foote, F. J. Castlehun, and Congdon & Congdon, for
Appellant.

Rodgers & Paterson, for Respondent.

TEMPLE, J.—This is an appeal from an order allowing ali-
mony and suit money in an action for a divorce.

Plaintiff contents herself in her complaint, so far as her cause
of action is concerned, with the averment of her marriage to
defendant and a charge of adultery against him. Defendant
denies the marriage, and avers that the person with whom he is
charged to have committed adultery is his lawful wife. He
also charges that plaintiff, since her alleged marriage to him,
has had illicit relations with other men.

The order or judgment appealed from was made after notice
and a hearing upon which many affidavits were read, as were
also depositions of the parties.

In addition to the showing as to her lack of means and the facilities of the defendant, the plaintiff states that she will require thirty or forty witnesses, many of them to prove that the parties have cohabited together as husband and wife, and are generally reputed to be such, and that the defendant has frequently so represented. In her deposition she states that the contract consisted simply in this, that the defendant said to her, "You are my wife." That no witnesses were present, and that she had refused longer to live with defendant unless he married her.

These facts are specifically denied by the defendant. He admits the cohabitation, and that he has supported the plaintiff, but he avers that she is an Indian woman who had, prior to his relations with her, been kept by many other men, by one of whom, Gibbs, she had a son, Thomas H. Gibbs, who makes an affidavit on her behalf in this case. Defendant also states that since she commenced living with him she has several times left him, living with other men, and that she sometimes went with the Indians to their fandangoes, and returned when she chose. He denies that either ever supposed the relations to be matrimonial, or that he ever called her wife, or represented her to be such. He says that he never even spoke to her upon the subject, but he admits that he supported her and her son.

Thomas H. Gibbs, the illegitimate son of the plaintiff, corroborates the statements of his mother, and says he "was always told and led to believe by said John R. Hite that plaintiff was the wife of said John R. Hite."

Plaintiff also read the affidavit of one James D. Westfall, who deposed that on one occasion defendant introduced plaintiff as his wife, and also that the parties were generally reputed to be husband and wife. This constitutes the evidence of plaintiff upon the issue of marriage.

The defendant, in addition to his specific denial, read the depositions of ten other persons, all of whom depose that they were intimate acquaintances of both parties and well acquainted in the neighborhood where they lived. They unite in saying that neither party ever claimed to be married to the other, and they were not, at any time, reputed to be husband and wife. Some of them corroborate other statements made by defendant

as to illicit relations of plaintiff with others. In addition, the reputation of Gibbs, plaintiff's son and main witness, was attacked.

Appellant contends that the showing was insufficient to justify the action of the court in granting alimony. The testimony of plaintiff in regard to the contract of marriage was in itself quite unsatisfactory, especially when taken in connection with the charge in defendant's affidavits, which she does not deny, that she had, before her cohabitation with defendant, and even since, had improper relations with other men. Under such circumstances it is difficult to believe that an Indian woman would object to further relations except upon condition of marriage. The positive denial of the defendant is certainly sufficient to overcome this testimony under such circumstances. The matter must then depend upon the evidence of common repute, and no one would contend that the plaintiff did show a common, uniform, and undivided repute of marriage.

But I think it evident that the court did not determine the question of marriage at the hearing. The judge doubtless adopted the views of plaintiff's counsel upon the subject and concluded that it was only necessary to hold that plaintiff had by her affidavits made out such a case as would throw the burden of proof upon the husband.

To justify alimony, marriage must be admitted or proven. Upon this subject there is no difference in the authorities. Plaintiff's counsel contends that it is proven, within the meaning of this rule, when the wife upon her showing makes a *prima facie* case, regardless of the denials or proof produced by the husband. He says it is a novel proposition that on the hearing for temporary alimony plaintiff must produce a preponderance of evidence. He claims this would be equivalent to saying: "Prove your case by a preponderance of evidence, and then you shall have an allowance to enable you to make such proof." He also says: "In this case the plaintiff made a *prima facie* case, and if the defendant had produced a hundred witnesses in an attempt to overcome her affidavits the result would be the same. Indeed, it would be only stronger reason for allowing her means sufficient to procure the evidence which she and her counsel,

who had talked with the witnesses, say she can produce, if given the means to do so."

And this, I think, is really the question in the case: Was it sufficient to entitle the plaintiff to alimony and suit money for her to make by her own showing a *prima facie* case? I believe there is no authority for that position. If the marriage were admitted, then, upon a showing of the wife's necessities and the faculties of the husband the allowance is almost a matter of course. It is otherwise when the marriage is denied. Then, before alimony can be allowed, the marriage must be proved, and a *prima facie* showing made by the wife when there is a counter showing is not sufficient. The judge should be satisfied from the entire proof made of the fact of marriage. Unless upon that question the husband has had his day in court and a hearing, if alimony is allowed, his property is taken without due process of law.

This precise question has not been considered, or even suggested, in any case to which my attention has been called, except in *McKenna v. McKenna*, 70 Ill. App. 340. It was there said that in such case—when the marriage is denied—the order cannot properly be made "until a hearing has been had and the court upon it finds that the relation of wife and husband exists."

The hardships which might result from either doctrine is there very tersely stated. The learned judge quotes from *Schonwald v. Schonwald*, 1 Phill. Eq. 219, to the effect that it is better when a woman makes oath of the fact of marriage to make an allowance, although the oath may turn out to be false, than that a wife may be in danger of starvation "if a brutal husband makes oath denying the marriage, which may turn out to be false." To which the Illinois judge replies that "the more accurate statement would be that it is better to compel any man to pay temporary alimony and expenses of suit to any woman who may see fit to make oath that he is her husband, however strongly he may deny the allegation, rather than to allow her to be in want of money which he has."

Whatever hardships may result, the court cannot lawfully take by final decree money from A and give it to B, whatever may be the necessities of B, when A disputes the facts upon

which his liability is made to depend, without a trial and a determination of the issues made.  The hardship to B cannot modify the imperative rule of law and the absolute constitutional guaranty.  It is not such a trial, and there can be no such finding, when a man is merely called into court to see whether one claiming to be his wife has in her pleadings and affidavits made a *prima facie* case.  He must be heard and be allowed to submit evidence which must be considered in determining as to the fact of marriage.

But that opportunity need not be on the trial of the case itself.  The application for alimony, though it cannot be considered a separate suit, is a proceeding for a separate judgment, which, when granted, has nothing to do with the final judgment in the case, and will not be affected by it.  It is a final judgment from which an appeal may be taken.  (*Sharon v. Sharon,* 75 Cal. 1.)

To satisfy the requirement of due process of law it is not always necessary that such a trial should be afforded as is had in ordinary suits in courts of justice.  The hearing allowed must be such as is practicable and reasonable in the particular case. (Cooley's Constitutional Limitations, 434.  See, also, *Ex parte Ah Fook,* 49 Cal. 406; *Lent v. Tillson,* 72 Cal. 404.)  Cooley says the opportunity to be heard must be such as "the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs."

It has been the practice to determine as to the allowance of temporary alimony upon motion with notice and upon affidavits.  The defendant is thereby afforded an opportunity to be heard.

Many cases are cited by respondent's counsel which he contends hold that all that is required on the part of the wife to justify an allowance of alimony is that she, by her showing, shall make such a case as upon a trial of the issue would cast the burden upon the husband.  It is not necessary to review all the cases, but the case of *Brinkley v. Brinkley,* 50 N. Y. 184, 10 Am. Rep. 460, is much relied upon, and concerning it a few remarks may be made.  That case has some likeness to this.  A contract marriage was alleged, with subsequent cohabi-

tation. The wife alleged that defendant on many specified occasions introduced her as his wife, that they were received as husband and wife by reputable acquaintances, and such was their common reputation. The husband denied the marriage, and that he had by word or act at any time or place given the least foundation for the supposition or charge that plaintiff was his wife. He denied that their cohabitation was matrimonial, but averred that plaintiff was of unchaste character and person, and her relation with defendant was libidinous and unsanctioned by law. In other words, he admitted the cohabitation, claimed that it was meretricious from the beginning. Judge Folger did not say that this was not a denial of a fact essential to consti-. tute marriage, but the contrary. Cohabitation, and holding out to the world that the persons so cohabiting are married, and general reputation, though all admitted, do not of themselves constitute marriage. But they authorize the presumption of the other fact, to wit, that the cohabitation was with matrimonial intent. This last fact was denied by Brinkley. The court did consider the affidavits of defendant, but concluded that they did not overcome the case made by the plaintiff. The judge did say that the question was not whether the evidence would be sufficient to justify a final decree, but whether "the proofs of the parties give reason to apprehend that upon a trial of the issues between them there is the fair probability that the plaintiff will maintain her allegations." That is, does the evidence submitted by both show that probably plaintiff will prevail? I do not understand how this could be unless there was upon that hearing a preponderance of evidence in favor of marriage, although, inasmuch as the trial was not as complete nor the evidence of as high a grade as upon the trial of the issues in the case, it would not justify a final decree or a finding which would be an estoppel.

Judge Folger evidently thought that when Brinkley admitted that they had cohabited as husband and wife in the face of the world, and had associated with intimate acquaintances who were reputable people, as though the relation was honorable, that it raised a presumption of marriage not overcome by the general denials of the defendant and his claim that the relation was meretricious. Innocence and morality are to be presumed

rather than the opposite. This is put very strongly by Judge Folger. He says the defendant admits facts and circumstances presumptive of marriage, but says of them "that though apparently proper and rightful, they were but the cover for a meretricious and libidinous connection, begun and continued in impurity," and that the issue was whether the cohabitation was honorable and matrimonial, or "the unsanctioned foregathering of a lecher and a wanton."

This view was taken of that case in *Collins v. Collins,* 71 N. Y. 269. There the wife made, beyond doubt, a *prima facie* case, but the husband averred that the *de facto* marriage, which he admitted, was void, and the court held that it was error to allow temporary alimony until that question was settled.

The principal difference between this case now in hand and the Brinkley case is, that this defendant denies that he ever represented the plaintiff to be his wife, or that they were reputed to be such. In the Brinkley case these facts were admitted.

We are not called upon here to say that it is necessary, in order to justify the allowance of temporary alimony, that a marriage *de jure* must be shown. The rule upon this subject is discussed by Mr. Bishop in his work on Marriage, Divorce, and Separation, section 922 *et seq.* All the evidence here tending to show marriage at all tends to prove a marriage *de jure;* and such was also the fact in the Brinkley case, although counsel seem to have understood that case differently.

I think the superior court did not intend to hold upon all the evidence before it—that of defendant as well as that submitted by plaintiff—that there was a preponderance in favor of the fact of marriage; and, if it must be held that it did so adjudge, there was a plain abuse of discretion.

Judgment and order reversed.

Van Dyke, J., and Henshaw, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment of reversal. It is only a wife who can claim alimony (Civ. Code, sec. 137), and, when the fact of marriage is in issue and unproved, there is no one in that position. To allow a woman

alimony for the purpose of enabling her to prove that she is a wife seems to me to involve a glaring absurdity, and to allow it every time she makes a *prima facie* case of marriage by her pleading or affidavit would result in something more serious than an absurdity.

If a husband sues for a divorce, alleging a marriage, of course there can be no question of the right to alimony, if he is able to pay and the wife is in need. If he sues to annul a marriage upon the ground that it was void, *ab initio,* by reason of fraud, pre-contract insanity, et cetera, the granting of alimony *pendente lite* would be proper, because a formal marriage is alleged and will remain a lawful and established marriage in the absence of affirmative proof by him of the existence of some fact, or facts, which will invalidate it. In such a case, I concede the propriety and justice of allowing the wife (for until the fraud or other invalidating circumstances are established she is the wife) money to make her defense.

But when a woman sues for a divorce, and is met at the very threshold of the proceeding by a denial that she ever was a wife, the case is entirely different. She must establish the marriage before she can claim alimony or suit money, and she must establish it at a trial and by satisfactory evidence. Even if this conclusion involved the inconveniences and hardships which counsel have depicted in their arguments, it would be none the less inevitable, but in my opinion such instances of hardship will rarely, if ever, arise. In a case of this aspect the plaintiff is not limited to a bare allegation of marriage in general terms. She may allege the specific facts from which the inference of marriage arises, with all the circumstances of time and place, and the defendant, in order to put the fact of marriage in issue, will be compelled not only to deny marriage in general terms, but also to make specific denials of the facts which *prima facie* constitute marriage. To make such denials he must expose himself to the danger of being convicted of perjury if the facts alleged are true. If it be said that this is not sufficient security to plaintiff, I answer that it is at least equal to any security the defendant or the court can have that the plaintiff's claim is not wholly fictitious.

In this case, the defendant makes a complete denial of the

facts alleged by plaintiff as constituting a marriage. And until that issue is tried and determined by final judgment the plaintiff has no claim upon him as his wife.

Undoubtedly, there are numerous cases in this country which can be cited in opposition to this view, but the sounder reason and the more trustworthy authorities sustain it. In my opinion it is sustained by the reasoning of Judge Folger in the case of *Brinkley v. Brinkley*, 50 N. Y. 184, 10 Am. Rep. 460, cited by Justice Temple, and still more fully sustained by the decisions to which Judge Folger refers.

Of course, it has been assumed in what has been here said that there is no serious contention on the part of the respondent that the superior court has tried and finally determined the issue of marriage in her favor. There is, in fact, no such claim. The whole argument in support of the order appealed from is that it required only a *prima facie* showing by *ex parte* affidavits to sustain it, and that the issue of marriage is still to be tried.

HARRISON, J., concurring.—Further consideration upon the rehearing of the question involved herein has led me to the conclusion that the court erred in making the order appealed from. The question involved in the appeal is to be determined by the statutes of this state, irrespective of the decisions thereon by the ecclesiastical and chancery courts of other jurisdictions, however serviceable the opinions of those courts may be in arriving at a proper construction of these statutes. "The code establishes the law of this state respecting the subjects to which it relates" (Civ. Code, sec. 4); and section 137 of the same code provides: "While an action for divorce is pending the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action." As such order can be made only in behalf of the wife, it is essential that the applicant for the order make it appear to the court that she is the wife of the respondent. In an action for divorce by the husband, it would appear from his complaint that the defendant is his wife, and no further showing of this fact would be required; but in an action by a woman who claims to be the wife of the defendant, if the defendant denies that the plaintiff is

his wife, she must establish the relation between them to the satisfaction of the court before she can be entitled to the order. The existence of this relation would be the main issue in the action, and would need to be affirmatively established before any decree of divorce could be rendered; but I do not think that the mere denial by the defendant that the plaintiff is his wife ousts the court of power to make an order requiring him to provide her with means to prosecute the action, or for her support during its pendency. An application for alimony can be made only "while an action for divorce is pending;" and to this extent it is dependent upon the issues involved in such action, but the granting or refusal thereof is not dependent upon the final determination of the issues in the action, or available in the determination of those issues. It is a collateral proceeding or episode within the action, authorized for a particular purpose, but dependent for its maintenance upon the existence of the action. It is to be heard and determined upon a record of its own, and the decision thereon may be made and may be the subject of an appeal before the determination of the issues in the action. The evidence offered in its support may or may not be the same as that which will be offered upon the trial of the issues presented by the pleadings. Being authorized for a special purpose, the decision thereon is limited to that purpose, and can be no more available for the determination of the issues in the action than is the preliminary determination upon an order for the publication of a summons that a cause of action is stated in the complaint, or than an order for family allowance to one claiming to be the widow of the decedent is available at the distribution of the estate. If, upon the application, the fact of marriage is denied by the defendant, it is to be determined like any other question of fact upon the evidence offered in its support, and should be denied unless the evidence thus offered would be sufficient to justify the court in granting a divorce, if the action were submitted upon that evidence at the final hearing.

Upon the hearing herein the defendant denied that there had ever been any intermarriage between him and the plaintiff, and there was no direct evidence of such marriage. I do not think that the deposition of the plaintiff was entitled to any consid-

eration by the court for the establishment of this fact. The evidence contained therein consisted merely of her assent to statements of fact made by her counsel, and it sufficiently appeared, both by her own statement and by the character of her responses to the questions put to her, that she could neither speak nor understand the English language. The plaintiff sought to establish the marriage between them by evidence of repute, and for that purpose offered the affidavits of two persons to the effect that she was reputed to be his wife. In response thereto the defendant read the affidavits of several persons to the effect that the parties were never reputed to be married in the community in which they lived.

Repute of marriage is but hearsay, and the fact of marriage is not established by reputation, unless it appears that the reputation is uniform. Hearsay ceases to be entitled to any weight as evidence unless it is uniform, and it is only by reason of its uniformity that it will, in any instance, authorize the presumption of a fact. The court is not at liberty to determine the fact upon a preponderance of the hearsay, but if it is divided it must be rejected entirely. "Where reputation is relied on, that reputation, to raise the presumption of marriage, must be founded on general, not divided or singular, opinion; and where reputation in such case is divided, it amounts to no evidence at all." (*Barnum v. Barnum,* 42 Md. 297.) Cohabitation of a man and woman gives rise to reputation of their marriage, because the presumption from one's conduct is in favor of innocence, and their cohabitation is presumed to be consistent with good morals and therefore matrimonial; but, if their cohabitation is shown to have been illicit in its origin, the presumption of innocence is overcome and the continuous cohabitation will be presumed to be illicit. If during its continuance their cohabitation is changed from an illicit to a matrimonial character, the burden of showing this fact is upon the one who would avail himself of the effect of the change. It clearly appears herein that the intercourse of the plaintiff with the defendant was illicit at its commencement, and so continued for many years, and there was no evidence except that of the plaintiff of any change in its character; but, as above stated, her evidence was not entitled to any consideration. Moreover, pre-

sumptions are resorted to for the establishment of facts only in the absence of direct evidence upon the facts sought to be established; and it is a rule in the consideration of evidence that when it is within the power of a party to produce direct evidence of the fact, and, instead of doing so, he produces evidence of an inferior character, it will be presumed that the direct evidence would be adverse to his claim.

The contention on the part of the respondent that when the fact of marriage is put in issue it is only necessary for the wife to make a *prima facie* showing in order to entitle her to alimony for the prosecution of the suit, as well as the contention by the appellant that if he is compelled to pay alimony to the plaintiff prior to the determination of the action, and while it may be finally determined that she is not his wife, he will be deprived of his property without due process of law, is fully considered in the opinion of Mr. Justice Temple, and I concur in his views thereon. If the fact of marriage is denied by him, he is as much entitled to a hearing and an opportunity to controvert the showing made by the plaintiff upon her application for alimony as at the final hearing of the action, and in either case the issue thus presented is to be determined by the court upon a preponderance of the evidence thereon. If, upon her application, he is given such a hearing as is appropriate to the character of the controversy, or, as is usual in such cases, with the opportunity to controvert her claim as fully as he may desire, he receives all the protection to which he is entitled by law.

In view of the principles which should have governed the court in considering the evidence offered at the hearing of the plaintiff's application, I am of the opinion that there was no evidence before it tending to show a marriage between the parties, and that her application should have been denied.

McFARLAND, J., dissenting.—I dissent, and think that for the reasons given in the opinion in Department the order appealed from was there properly affirmed, and should be adhered to. It seems to be admitted that in a divorce suit, although the marriage be denied, still an allowance for alimony to the wife may be rightfully made before the determination of the issue of marriage at the final hearing of the case. But that

would be of little advantage to the plaintiff if at the preliminary, hearing "the marriage must be proved" in the sense in which that proposition is meant in the opinion of the majority of the court. In the case at bar, the issue of marriage or no marriage is the main issue in the case, and according to the majority opinion she cannot be allowed any aid for the purpose of procuring evidence on that issue unless, without such aid, she had already proved it; although she may have no means at all, she must still rely entirely upon herself in obtaining evidence and procuring counsel in support of her side of that issue. Whether or not she has made sufficient proof at the preliminary hearing to warrant the court in allowing her aid in preparing herself for the final adjudication of that issue is a question in the first instance for the exercise of the discretion of the trial court; and in passing upon the conclusion of the trial court upon that point this court is estopped, in my opinion, from disturbing that conclusion if there be a fair and material conflict of evidence upon the issue. In the case at bar, there is no doubt that the respondent produced evidence tending strongly to establish the fact that there was a marriage. It is true that appellant also produced evidence on the other side of that issue, but I do not think that, under the well-established rule touching conflicting evidence, we are warranted in disturbing the conclusion of the court below. Respondent was clearly entitled, in my opinion, upon the showing made by her, to have aid from the appellant in procuring evidence to be used upon the final determination of that issue.

Appellant seems greatly impressed with the danger of some well-to-do husband being compelled to contribute to the prosecution of a suit brought by some woman who falsely swears that she is his wife; but no fear seems to be entertained that a husband may prevent an injured wife from obtaining means to prosecute a just suit by simply averring that he is not her legal husband.

Appellant seeks to emphasize the fact that the plaintiff is an Indian, but it is entirely immaterial what race she belongs to. Appellant selected and enjoyed her as his chosen companion through the youth and prime of her womanhood. When he

discarded her it was evidently not because she was an Indian, but because she was then an old Indian.

GAROUTTE, J., dissenting.—It is held in the majority opinion in this case that when alimony and suit money, *pendente lite*, is prayed for in an action for divorce, the marriage being denied, then upon the preliminary hearing the fact of marriage must be established by a preponderance of evidence, or the application should be denied. Upon the final hearing it is only necessary to establish the marriage by a preponderance of evidence. Hence, if the conclusion of the court be sound, the result is that in every case where the marriage becomes an issue of fact there can be no such thing as alimony and suit money. For, if the woman is able to establish the marriage by a preponderance of evidence without the money to assist her, she has no need of the money, and her application should be denied for that reason. If she can establish the fact of marriage upon the preliminary hearing by a preponderance of evidence, without money, she can as readily establish that fact upon the final hearing without money. If she be able to establish the fact of marriage by a preponderance of evidence without money, then she need not go to the trouble of establishing that fact until the final hearing. It is thus made plain that the entire reason of the rule, the principle upon which the rule rests, is all gone when it is held that the fact of marriage upon the preliminary hearing must be established by a preponderance of evidence. It may be admitted that the conclusion declared by Justice Temple is supported by persuasive reasons; yet we find no court in this country sustaining the proposition, unless the decision in *McKenna v. McKenna*, 70 Ill. App. 340, is that case.

In the leading case of *Brinkley v. Brinkley*, 50 N. Y. 184, 10 Am. Rep. 460, Chief Justice Folger labored hard, but with somewhat indifferent success, to lay down the rule which should guide *nisi prius* courts in their determination as to when temporary alimony and suit money should be allowed the wife in cases where the marriage is denied. The New York court, in that case, speaking by the mouth of the chief justice, says: "It may be said, too, that for the purpose of an application for temporary alimony there will not need that the fact of mar-

riage be so conclusively established as for the purpose of permanent alimony, or any other ultimate purpose of the action." In the same opinion it is also said: "Yet, if the matters contained in other papers or shown by legitimate proofs before the court make out in the judgment of the court a fair presumption of the fact of marriage, it has the power to grant alimony pending the action and expenses of the action." It is again said in the same case: "The question now before us, however, is not whether, upon the proofs as shown by the parties, a final judgment should be rendered, that there has been an actual valid marriage between the parties, and whether a limited divorce should be adjudged with a permanent separate maintenance for the plaintiff, to be provided by the defendant. The question now is, Do the proofs of the parties give reason to apprehend that upon a trial of the issues between them there is a fair probability that the plaintiff will maintain her allegations?" In *Collins v. Collins,* 71 N. Y. 274, the same court that decided the Brinkley case declares the Brinkley decision to be "that it was not necessary that the marriage be established as conclusively as would be required for the ultimate purposes of the action, but that the plaintiff must make out a reasonably plain case of the existence of the marriage relation, and she would then be furnished with the means of temporary support, and of conducting the suit until the truth or falsity of her allegations could be ascertained." In the Collins case the rule is thus declared: "The plaintiff is bound to present a case to the court showing that she has a fair prospect of success in the action, and that she controverts and intends to litigate the matter set up by the defendant, and has reasonable grounds for so doing." In *Vincent v. Vincent,* 16 N. Y. Com. Pleas, 534, the court said: "But, as in other preliminary contestations, the fact is not to be established with the clearness and conclusiveness exacted of proof as the basis of a final adjudication upon the the rights of the litigant parties; but it suffices if on an application for alimony the putative wife makes out a reasonably plain case of the existence of the marriage relations." (Citing *Brinkley v. Brinkley supra.*) In *Sharon v. Sharon,* 75 Cal. 45, it is said: "In a suit for divorce, when the marriage is denied by the defendant's answer, three things

must be made to appear on application for temporary alimony; the marriage by satisfactory evidence showing at least *prima facie* a marriage in fact."

I cite the foregoing authorities to show that the rule of law declared by the majority opinion as to the *quantum* of evidence necessary to be produced by the wife at the preliminary hearing, to support the fact of marriage, is opposed to the great weight of authority. Yet I am free to say the true solution of the question presents difficulties of no small proportions—difficulties that I am not willing to meet unless necessity demands it, and here I find no such necessity; for, even conceding the rule of law to be as stated by the learned writer of the majority opinion, namely, the marriage must be established by a preponderance of evidence, then under such rule this order should be affirmed.

The reasons for the affirmance of this order are these: Upon the trial of any issue of fact in a civil action it is not for this court to say, upon appeal, that the evidence preponderates in favor of the plaintiff, or that the evidence preponderates in favor of the defendant. This court has nothing to do with the preponderance of evidence. It has so decided times innumerable. It is even a rule universally invoked by this court against the defendant in criminal cases. Under all authority in this state it is for the trial court to say which way the evidence preponderates. And, when that court has so declared, the matter of preponderance of evidence is forever foreclosed from investigation by this court. Treating this proceeding for alimony and suit money with all the dignity of a civil action, conceding that it is to be tried and decided exactly by the same rules of law as any civil action, then the only question here is, Does this record present a substantial conflict in the evidence as to the fact of marriage? And this question is not to be determined by the great number of witnesses upon the one side and the limited number upon the other, for it is often the case that the weaker side in number and in money is the stronger in right. Hence, the fact that the plaintiff is an Indian woman, and her son an illegitimate son, furnishes no reason why this court may cast aside their evidence. Either as matter of law or matter of fact it cannot be said that an In-

dian woman or an illegitimate son is not to be believed under oath.

Let us pause a moment to look at the evidence. A great portion of it is without substantial conflict, as follows: Hite lived with this woman for twenty-five years. During that time he furnished her with all the necessaries of life. He gave her a house in which to live. He was the father of her child. His sister visited her at this house and slept with her. His nephews visited her at this house, eat at her table, and addressed her as "Aunt Lucy." He sent her illegitimate son to school, and paid the expenses of his schooling. He treated this son as his own son, and he was always considered and reputed in the neighborhood to be the step-son of defendant Hite. In addition to this uncontradicted evidence we have the testimony of Thomas Gibbs, the illegitimate son, to the effect that the plaintiff is known far and near throughout the southern part of California as the wife of John R. Hite; that defendant has introduced plaintiff as his wife, and held her out to the world as his wife continuously; that defendant's relatives and friends have associated freely with plaintiff and visited plaintiff as the wife of defendant. We also have the testimony of one Westfall, to the effect that plaintiff and defendant were known in that neighborhood and adjoining counties as husband and wife; that the plaintiff was everywhere called "Mrs. Hite," and "Lucy Hite, wife of John R. Hite," and that plaintiff and defendant held themselves out to the world and were always treated as husband and wife. From this condensed statement of the showing made by the plaintiff I feel entirely satisfied in saying that she is entitled to alimony and suit money, in order that she may be able to meet the defendant squarely at the trial of the case upon the issue of marriage or no marriage.

I utterly fail to comprehend how it may be said from the record that the trial judge decided this case upon a wrong theory. There is not a word in the record to indicate it. Upon the contrary, the fact that the hearing was had after notice to the other side, and that upon such hearing defendant introduced a great mass of evidence to support his claim of no marriage, indicates convincingly to my mind that the trial judge heard and decided the case upon the right theory, and that his conclusion

was based upon all the evidence placed before him by both parties to the litigation.

I think the order should be affirmed.

Rehearing denied.