[Civ. Nos. 1920, 1921. Fourth Appellate District.—October 15, 1935.]

EDNA G. BANCROFT, Respondent, v. GEORGE BAN-CROFT, Appellant.

Loeb, Walker & Loeb, Milton H. Schwartz and Herman F. Selvin for Appellant.

S. S. Hahn, W. O. Graf and A. B. Edler for Respondent.

MARKS, J.—Two appeals from separate orders were consolidated by order of the Supreme Court prior to transfer to this court. The first appeal is from portions of an order allowing plaintiff five hundred dollars on account of trial costs and thirty-five hundred dollars on account of attorneys' fees with the reservation of the right to fix the balance of both at the time of trial. The second appeal is from an order allowing plaintiff twenty dollars per week alimony *pendente lite,* pending appeal, two hundred dollars costs of appeal, and seventeen hundred fifty dollars attorneys' fees on appeal.

In her second amended complaint, to which we will refer as the complaint, plaintiff sought a portion of the property

which she alleged was the community property of herself and George Bancroft, to whom we will refer as the defendant, and a monthly allowance for her support and maintenance. She set up three causes of action, the first for adultery, the second for desertion, and the third for failure to provide.

In his answer to the second amended complaint, to which we will refer as the answer, defendant admitted "that in the city of Buffalo, State of New York, on April 7, 1913, plaintiff and defendant participated in a ceremony which purported to make them husband and wife", but denied that they ever have been or are now married. He also denied the facts alleged in the several causes of action we have mentioned. He plead several special defenses among which are statutes of limitations, laches, his marriage to Octavia Broske on May 30, 1916, and the marriage of plaintiff to Clarence E. Holt in 1898, together with an alleged defect in their divorce in Michigan on March 22, 1913, which, it is contended, made their divorce ineffective.

Plaintiff brought defendant into court on an order to show cause and secured the first order under attack here. Defendant appealed from that order and plaintiff secured the second order. The second order to show cause was submitted to the trial judge under the evidence adduced at the first hearing.

The principal contention made by defendant here is that plaintiff failed in her proof of their marriage and therefore cannot recover either support or suit money from him. He divides his argument in support of this contention into two phases: (1) That where marriage is denied by a defendant the plaintiff must prove marriage by a clear preponderance of the evidence before she can receive alimony *pendente lite*, costs, or attorneys' fees; (2) that as defendant proved a ceremonial marriage with Octavia Broske on May 30, 1916, a strong presumption was raised of the dissolution of the prior marriage that can only be overcome by satisfactory proof that neither party obtained a divorce, which proof plaintiff did not produce. We will consider these contentions in the order we have stated them.

In support of his first contention defendant relies upon the following authorities: *Hite* v. *Hite*, 124 Cal. 389 [57 Pac. 227, 71 Am. St. Rep. 82, 45 L. R. A. 793], *Harron* v. *Harron*, 128 Cal. 303 [60 Pac. 932], *McKenna* v. *McKenna*, 70 Ill. App. 340, *Vreeland* v. *Vreeland*, 18 N. J. Eq. 43,

*State* v. *Superior Court*, 55 Wash. 347 [104 Pac. 771, 25 L. R. A. (N. S.) 387], *McFarland* v. *McFarland*, 51 Iowa, 565 [2 N. W. 269], and 19 Corpus Juris 212, sec. 512.

In the case of *Hite* v. *Hite*, *supra* (a fair example of the other cited cases), the defendant appealed from an order allowing the plaintiff alimony and suit money in her action for divorce. She relied upon a common law, not a ceremonial, marriage with defendant, which marriage he stoutly denied. The Supreme Court reached the conclusion that as the *fact* of marriage had been denied the plaintiff could not be allowed alimony and suit money until she established the *fact* of marriage by a preponderance of the evidence. A reading of that case and the others cited demonstrates that they are not authority here. Bancroft did not deny the *fact* of his marriage to plaintiff, nor could he do so, because it was proven as a ceremonial marriage by ample documentary evidence in addition to his own testimony and that of plaintiff. All that he did was to deny the legal effect of this marriage for the reason that the plaintiff was under a supposed disability that prevented her from entering into a lawful marriage with him.

It is established in other jurisdictions that in proceedings of this kind where the *fact* of marriage is admitted, but its legal effect denied because of some supposed legal disability of one of the parties, the rule announced in the Hite case and the others following it cannot be applied. The reasons for this distinction are clearly set forth in *Lau* v. *Lau*, 140 N. Y. Supp. 310. In that case, as here, the parties had gone through the marriage ceremony and assumed the marital relation. In a suit by the wife the husband admitted the performance of the ceremony but denied the legal effect of the marriage because the wife had a living spouse of a former undissolved marriage. In discussing the question the New York court said:

"The defendant having admitted the fact of his ceremonial marriage to the plaintiff, the burden of proof of its invalidity in law under the pleadings as they stand rests upon him, since he asserts it. If it should appear from the evidence that the alleged prior marriage were not valid in law or had been terminated prior to the marriage of the parties to this action, or if the defendant failed in his proof concerning it, then the parties to this action are husband and wife, with the reciprocal rights and duties which flow from that relation.

468

(See *Brinkley* v. *Brinkley,* 50 N. Y. 184, 193 [10 Am. Rep. 460] ; also, *Vincent* v. *Vincent,* [Com. Pl.] 16 Daly, 534 [17 N. Y. Supp. 497].) In the former of these cases a very exhaustive statement of the principles governing this court in determining applications for alimony and counsel fees in cases analogous to the present is made by Judge Folger and is summed up at page 193 of 50 N. Y., 10 Am. Rep. 460, as follows:

" 'And the principle. at the bottom is this: Where, marriage in fact being denied, the affirmative is upon the party claiming to be the wife to show that an actual marital relation ever existed, there alimony will be denied until that fact is proven to the satisfaction of the court, or is admitted; for it is upon the existence of that relation alone that the right to alimony depends. Where an actual marital relation has been admitted or shown, and its existence in law is sought to be avoided by some fact set up by the husband, and it devolves upon him to show that fact, there alimony will be granted until that fact is shown; for the relation actually exists upon which the right to alimony depends, and the object of the litigation is to annul that actual relation by showing some other fact, the existence of which is denied. It may be said, too, that for the purposes of an application for temporary alimony there will not be need that the fact of marriage be so conclusively established as for the purpose of permanent alimony, or any other ultimate purpose of the action. It is for the interest of society and in aid of public policy that, where the married relation has been in fact assumed, it should not easily and capriciously be laid aside; and where it is averred by the putative wife and denied by the alleged husband, if she makes a reasonable plain case of its existence, she should be furnished with means of temporary support and of conducting the suit until the truth or falsehood of her allegations can be ascertained by the proofs formally taken in the case.' " The following cases support the same rule: *Eickhoff* v. *Eickhoff,* 29 Colo. 295 [68 Pac. 237, 93 Am. St. Rep. 64], *Vincent* v. *Vincent, supra, Finkelstein* v. *Finkelstein,* 14 Mont. 1 [34 Pac. 1090], *Lea* v. *Lea,* 104 N. C. 603 [10 S. E. 488, 17 Am. St. Rep. 692], and *Reifschneider* v. *Reifschneider,* 241 Ill. 92 [89 N. E. 255]. See, also, 1 Ruling Case Law, 898, section 44, and cases cited, and 19 Corpus Juris 212, sections 513–515, and cases cited.

If we apply the rule announced in the Hite case to the facts before us we must conclude, on the record before us, that the trial court was fully justified in concluding that plaintiff established her marriage with defendant by a preponderance of the evidence. Both parties testified that the marriage ceremony had been performed. Plaintiff introduced certified copies of the records which thoroughly established the fact of the ceremonial marriage. It was admitted that the parties had lived together as husband and wife for at least a year after the ceremony. To meet this proof of marriage defendant did not go beyond the allegations of his answer which set up facts, which might or might not show, if proved, that plaintiff had a living husband at the time of the marriage of the parties, and some very vague testimony concerning a supposed divorce of defendant from plaintiff.

 Defendant next contends that because he proved a ceremonial marriage with Octavia Broske, occurring after his marriage with plaintiff, there arose a strong presumption that his prior marriage with plaintiff had been dissolved by divorce, which presumption had not been overcome by the evidence under the rule laid down in *Hunter* v. *Hunter,* 111 Cal. 261 [43 Pac. 756, 52 Am. St. Rep. 180, 31 L. R. A. 411], *McKibbin* v. *McKibbin,* 139 Cal. 448 [73 Pac. 143], *Wilcox* v. *Wilcox,* 171 Cal. 770 [155 Pac. 95], *Estate of Hughson,* 173 Cal. 448 [160 Pac. 548], *Kelsey* v. *Miller,* 203 Cal. 61 [263 Pac. 200], *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996], *Marsh* v. *Marsh,* 79 Cal. App. 560 [250 Pac. 411], and *Immel* v. *Dowd,* 6 Cal. App. (2d) 145 [44 Pac. (2d) 373]. The rule is thus stated in the Hunter case:

"It is presumed that a person is innocent of crime or wrong. (Code Civ. Proc., sec. 1963.) There is also a presumption and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage." These cases hold that it is not sufficient

for the party asserting the validity of the first marriage to prove that she had not obtained a divorce and had not been served with process in a divorce action brought by her husband. In order to overcome the presumption she must not only prove those facts but must prove that her husband was not granted a divorce in any of the jurisdictions in which he resided prior to the second marriage.

In each of the cited cases one of the parties to the first marriage was not in court. Such party was either dead or absent and the presumption that such deceased or absent party had obtained a divorce prior to the second marriage was allowed to prevail in favor of the second ceremonial marriage in the absence of satisfactory proof to the contrary. In the instant case both parties to the second marriage were in court and testified. Defendant told vaguely of circumstances which led him to believe he had obtained a divorce. This was a matter strictly within his own knowledge. Had he obtained a divorce prior to his second marriage he either knew, or should have known, when and where the decree was granted. Under these circumstances and on these preliminary proceedings, with the defendant on the stand and testifying, and he having failed to produce satisfactory evidence of his divorce from plaintiff, we believe the trial court was justified in invoking the following presumptions against him and against the one we are considering: ''That if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust.'' (Subd. 7, sec. 2061, Code Civ. Proc.) ''That evidence willfully suppressed would be adverse if produced.'' ''That higher evidence would be adverse from inferior being produced.'' ''That a thing once proved to exist continues as long as is usual with things of that nature.'' (Subds. 5, 6 and 32, sec. 1963, Code Civ. Proc.)

We are of the opinion that the proper rule on the question we are considering in this proceeding to obtain suit money is that applied in criminal cases in prosecutions for bigamy. In *People* v. *Huntley*, 93 Cal. App. 504 [269 Pac. 750], it was thus announced: ''The question as to whether or not a first marriage no longer exists is one peculiarly within the knowledge of a defendant and in such a case the burden is upon him to prove it. (*Commonwealth* v. *Boyer*, 7 Allen, (89 Mass.)

306.) This burden is not an unreasonable one. (*People* v. *Velasquez,* 70 Cal. App. 362 [233 Pac. 359].) Then again the marriage status having been proved and there being no evidence to show that defendant did not know that his former marriage had been pronounced void, annulled or dissolved, or that the first wife had been absent for five years without being known by the defendant to be living, the presumption is that the status as shown by the prosecution continued to exist. (*People* v. *Stokes,* 71 Cal. 263 [12 Pac. 71].) "

As we have indicated, defendant urges various other grounds for a reversal of the orders in question. These grounds are all matters of defense and should be thoroughly considered on the trial of the action. That they cannot prevail on this proceeding is made clear in *Kowalsky* v. *Kowalsky,* 145 Cal. 394 [78 Pac. 877], where the Supreme Court said: "In this action for divorce the defendant appeals from an order requiring him to pay to the plaintiff the sum of one hundred dollars a month for her support during the pendency of the action and the further sum of two hundred and fifty dollars for counsel fees. If we were hearing an appeal on the merits we might be disposed to scan carefully the allegations of cruelty to determine whether a cause of action is well stated. But the marriage is admitted in the answer, and a cause of action for extreme cruelty is sufficiently stated to make out a prima facie case. The purpose of allowing alimony to the wife during the pendency of the action is to enable her to live in the meantime and to employ counsel who can properly present her case to the court, both in the pleadings and in the introduction of evidence. The merits of the case, where there is no issue as to the marriage, will not be considered on an application for such alimony further than is necessary to determine that the wife is proceeding in good faith and not for the mere purpose of obtaining money from the husband. (*Storke* v. *Storke,* 99 Cal. 621, 622 [34 Pac. 339]; *Langan* v. *Langan,* 91 Cal. 654 [27 Pac. 1092]; *Poole* v. *Wilber,* 95 Cal. 339 [30 Pac. 548]; *Hite* v. *Hite,* 124 Cal. 389 [57 Pac. 227, 71 Am. St. Rep. 82, 45 L. R. A. 793].) "

What we have said disposes of all of the contentions of defendant on his appeal from the order granting plaintiff thirty-five hundred dollars on account of attorneys' fees and five hundred dollars on account of her costs of the trial of the action as well as those made on the second appeal. However,

on the second appeal a question presents itself which we believe deserves our consideration.

■ The trial court allowed plaintiff two hundred dollars costs and seventeen hundred and fifty dollars attorneys' fees on the appeal from the first order. These sums are entirely disproportionate to the costs incurred by plaintiff and the services rendered by her counsel on these appeals.

The only costs to plaintiff is the printing of her twenty-six page brief, exclusive of covers. The recoverable costs of printing a brief are limited to one hundred dollars. (Sec. 1034, Code Civ. Proc.) The costs of printing plaintiff's brief could not have equalled that amount. We deem it just to strike out that item from the order and give plaintiff her actual costs of appeal.

The fees allowed for the services of the attorneys on these appeals are greatly in excess of the reasonable value of such services when measured by either the quantity or quality of the work performed by them and the amount involved on the appeals. The reply brief filed by them contains but twenty-six pages and the citation of but sixteen authorities, including the authorities cited by defendant and considered by plaintiff's counsel. These cited authorities were entirely insufficient for our purposes and we have had to make an independent search to satisfy ourselves as to the law governing some of the questions involved. The oral arguments of both counsel could not have consumed more than ten minutes including interruptions by members of the court. A typewritten brief of less than nine pages with the citation of eight authorities was filed by counsel for plaintiff after the oral arguments. The record is not extensive. The attorneys' fees on these appeals should be reduced to seven hundred fifty dollars which will amply compensate counsel for the work done.

The order of September 7, 1934, allowing plaintiff thirty-five hundred dollars on account of attorneys' fees, and five hundred dollars on account of her costs of the trial of the action is affirmed.

The order of October 5, 1934, allowing plaintiff twenty dollars per week alimony *pendente lite,* pending appeal, seventeen hundred fifty dollars attorneys' fees, and two hundred dollars costs on these appeals is modified by reducing the

attorneys' fees to seven hundred fifty dollars and striking out the two hundred dollars costs, and as so modified is affirmed.

Plaintiff will recover her costs of appeal.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1935.