Ruff-in, C.
 
 J.
 

 The evidence satisfies the court of
 
 the-
 
 extreme mental weakness, at the least, if not absolute fatuity from birth, of Reese Johnson. The inquisition of 1827 has been produced, and it finds this person to be “of unsound mind, and that he has been so from his infancy.” Pending this controversy, there has also been a second inquisition, on which the jury, upon the testimony of witnesses, and also upon the production and examination of the party in person, found him “to be an idiot, and that he was so from his birth.” It is not necessary to say, whether the inquisitions would or would not be sufficient
 
 prima facie
 
 evidence, on which to found a decree in the absence of all opposing evi-
 
 *475
 
 deuce. It is certainly open to being rebutted by the defendant, and it seems that in England the ecclesiastical courts look on a finding of this sort as only a part of the requisite proof of unsonndness of mind, and demand direct evidence to be taken in the
 
 cause
 
 of that fact. Such additional evidence has been offered in this case. The depositions were not, indeed, carefully taken or happily expressed. But it appears from the testimony of several witnesses, that the party was ignorant of the most common things in life : such as the parts of a dollar that are current, seed and harvest time of the usual crops .of that part of the country, and the days of the week: and the witnesses give it as their opinion, that he has been a natural fool, or an idiot from birth. On the other hand, the defendant -has produced no witness : none to speak as to the other party’s capacity at the time of the marriage or before: none to shew a previous acquaintance between the parties or any addresses paid to her.: not even Howard or Owens, who attended upon the occasion, and are charged to have participated in the alleged imposition, who ought to have been produced to repel' that imputation, and to establish, if they could, that the marriage and the arrangements leading to it, were the acts of Reese Johnson, as a reasonable man, and not the contrivances of the defendant and her supposed confederates. This was the more indis-pensible, as the respectable gentleman, who .performed the ceremony, states, that the application to him was in Salisbury, by Howard, that he hesitated to name the parties, that in ten or.fifteen minutes the parties came, and with them Howard and Owens and another person, that he had never seen Johnson before, and had only a few words with him just before the marriage, which took place at once, and that immediately after the marriage Owens said Johnson was
 
 non compos
 
 mentis, and that he, Owens, had furnished money to pay for the license, and he appeared to be much diverted.; When to all this are added the known estimate put on this person’s understanding by his family, their distress at the occurrence, the immediate measures taken by the nearest members of it to rescue him frbm this connection and induce
 
 *476
 
 him to return to them,
 
 and
 
 the short period aquired to effect that end; one cannot hesitate to believe, that the party la-borod under great weakness, if not nearly total want of un-c[erstan(jjngj an¿ was incompetent to make any contract, and especially, one of such great importance as marriage; and, furthermore, that it was essentially solicited, procured and celebrated clandestinely, whereby those concerned evinced a consciousness of the wickedness of bringing it about, and that it was necessary to their success to conceal their purposes from the relations and guardian of this unfortunate being.
 

 Being satisfied that such were the facts in this case, it only remains to consider, whether this marriage in fact is void in law, and whether this court is competent' to pronounce it null. Upon each of those points our opinion is clear in the affirmative. It cannot be doubted, that idiotcy or lunacy is an insuperable impediment to the contracting of marriage, as it is to the entering into any other contract. Whatever doubt may in a dark age have been dropt by writers ou the law, the intelligent commentators of modem times, and most able Judges unite in holding, that a competent share of reason is necessary to the validity of the matrimonial contract, for that it, as every other, depends on the consent of the parties, and, without understanding, consent cannot be given. 1 Bl. Com. 438.
 
 Turner
 
 v
 
 Myers,
 
 J. Hogg. Cons. Rep. 416, and the cases there cited by Lord Stowell. These authorities hold such a marriage void at common law, and by some it seems to have been thought unnecessary, even to have its nullity declared by judicial sentence. However that may be, it is obvious that it is convenient and ñt in respect to the decent order of society, the conditio n of the parties and the succession of estates, that the invalidity. of such a marriage should be directly the subject of judicial sentence. Hence, although the
 
 common
 
 law deems it void, it has been the constant course in England for the courts, having the cognizance of matrimonial causes, to entertain suits for declaring its nullity, as in other cases of marriages void by reason of a legal impediment, as in cases of impo
 
 *477
 
 tency, duress, incest, or the like.
 
 Earl of Essex case,
 
 2 State Tr. 355. It has been thought by persons eminent in the profession, that as there are no ecclesiastical courts, properly speaking, in this country, the Court of Equity, from necessity, succeeded here to the jurisdiction of such questions. We are, however, spared the trouble of examining the point, since there cannot, we think, be a doubt, that the. jurisdiction is conferred by statute according to a fair and sound construction. The act, Rev. St. c. 39, gives jurisdiction both to the Superior Courts of Law, and to the Courts of Equity “ in all cases of applications for divorce,” and, by the second section, taken from the acts of 1814 and 1827, it is enacted, that when either party was and still is naturally impotent or has separated him or herself from the other and is living in adultery, “ or any other just cause for a divorce exists,” the injured person may obtain a divorce, either from bed or board, or from the bonds of matrimony, at the discretion of the court. The act creates and confers a jurisdiction over all matrimonial causes, and includes necessarily, we think, the jurisdiction to pronounce the nullity of a marriage
 
 defacto
 
 for want of capacity. For, although that case is not specially mentioned in the acts, and although the sentence in such case is not properly a divorce, whereby the bonds of matrimony are dissolved, but rather a sentence that the marriage never legally existed : Aud although, as we have before said, those large terms of the act of 1827 do not confer the arbitrary power of divorce, but must be restricted to the causes enumerated in the act of 1814, or others of a like nature, or to such enumerated causes as were grounds for holding a marriage void at common law and still in íea-
 
 son
 
 should annul it : Yet the act embraces this case, as we think, because this is divorce in the same sense that a sentence of nullity forimpotency is, and that is one of the cases mentioned in the act of 1814, and at common law the marriage of one deficient of understanding is, as we have seen, void.
 

 In the case of the
 
 Earl of Essex,
 
 the sentence found the fact of impoteney, as presumed, because after three years
 
 *478
 
 trial, after he was 18 years old, there had been
 
 nil ad cop-
 
 ulam; and then proceeded to declare the law, that such was cause of divorce
 
 a vinculo
 
 matrimonii: And, thereupon, it
 
 “
 
 pronounced and decreed the pretended marriage, so contracted and solemnized
 
 de facto
 
 between them, to have been and to be utterly void and to no effect, and that it ought to want and did want the strength of the law : And that the said Frances was and is, and ought to be free, and at liberty from any bond of such pretended marriage,
 
 defacto
 
 contracted and solemnized: And we do pronounce, that she ought to be divorced, and so we do free and divorce her, leaving the parties as touching other marriages, to their consciences.”— Thus it is seen, the nullity of the marriage is pronounced, but also a formal decree of divorce from that marriage, existing
 
 de
 
 facto, is also pronounced. So, it seems, it must be also in a suit for nullity of
 
 the marriage
 
 of an idiot or lunatic, and, therefore, it may be deemed appropriately “ an application for divorce,” according to the words of the statute, in that part of it, which confers the jurisdiction. For although impotency and want of capacity have this difference, that in the one case there is consent, and in the other none, yet in each, the sentence, in the first place, pronounces the marriage void, and there seems to be no incongruity in the one case more than in the other, in proceeding further actually to divorce the parties. This construction is rendered the clearer by the language of the subsequent part of the act, section 9, by which the proper decrees are provided for the several cases in which the jurisdiction had been previously vested: which are first, a decree dismissing the Ii-ble, or, secondly, a decree of divorce and separation from bed and board, or from the bonds of matrimony ; or thirdly
 
 a decree that the marriage is null and void;
 
 and then come the expressions, that “after a sentence nullifying or dissolving the marriage, all the duties and rights and claims of the parties in right of said marriage shall cease.” It is plain, therefore, that the act covers the case in which the parties contracted by shew of marriage, but were never in ■law and truth married for want of capacity, for which rea
 
 *479
 
 son the sentence pronounces the marriage null and void, but, because there is a marriage
 
 de
 
 facto, the sentence proceeds to dissolve
 
 that.
 
 The Court therefore pronounces that the marriage in fact, solemnized between Reese Johnson and Anna Kincade, is in law null and void for the want, at the time of solemnizing the same, of mental capacity on the part of the said Reese, sufficient to understand the nature of and assent to such a contract; and that the said Reese ought to be and is set free and divorced from the said Ann.
 

 The Court also thinks it very clearly a case for costs against the defendant upon the ground of fraud and circumvention in effecting the marriage.
 

 Per Curiam. Decree accordingly.