Pearson, C. J.
 

 It is enacted, Rev. Code, ch. 69, sec. 14, “Females under the age of fourteen and males under the age of sixteen years, shall
 
 he incapable of contracting marriage.”
 

 A marriage is duly solemnized in all respects save that the female is a few months under the age of fourteen; the parties lived together as man and wife, until she arrives at that age, •and afterwards continue so to live together, until the death of the other party.
 

 The question is upon the construction of this statute, was the marriage
 
 void,
 
 i. e. a mere nullity, or was it
 
 voidable,
 
 i. e. imperfect, but capable of being confirmed and made .perfect by subsequent consent and cohabitation as man and wife ?
 

 
 *196
 
 At common law, fourteen in males and twelve in females, was
 
 the age of consent,
 
 and if one or both of the parties, at the date of the celebration of the marriage, were under the requisite age, such marriage was
 
 imperfect,
 
 by reason of the fact that the parties were incapable of contracting marriage, but it became perfect and' was confirmed if the parties, after attaining the requisite age, assented to it by continuing to cohabit together as man and wife. In other words, the marriage was not void, but was only imperfect or voidable for the want of capacity, but could be made perfect dr be confirmed by the consent of the parties, implied from subsequent cohabitation as man and wife; on the same principle by which it was held, that the contract of one under the age of twenty-one, in respect of property, excejri for necessaries, although imperfect and voidable because of a supposed want of capacity, may be confirmed and made perfect by assent, after attaining the age of twenty-one. Indeed, the application of this principle, is especially called for in regard to the contract of marriage, from its peculiar.nature and consequences; Coke Lit. 33a; ibid 79a; note 43; 1 Bl. Com. 436. Such was the settled rule of law in regard to incapacity to contract, for the want of age, previous to the statutory enactment above recited; and in the opinion of this Court, the only effect of the statute, was to make sixteen instead of fourteen years in respect to males, and fourteen instead of twelve years in respect to females, the ages at which the parties, respectively, were capable of making a perfect marriage, leaving the rule of the common law unaltered in all other respects ;■ for, as is said by Bishop in his treatise on “marriage and divorce,” sec. 192: “The common law rule of fourteen in males and twelve in females, as the age of consent, was derived from the civil and canon law. It originated in the warm climate of Italy, and it has been thought not entirely suited to more northern latitudes. In some of the United States it has been altered by statute, and the age of consent, fixed at later periods of life.”
 

 This construction of the statute is supported by “ the reason of
 
 *197
 
 the thing,” for no ground of public policy can be conceived of making it expedient to deprive the parties of the common law right to confirm by subsequent consent and cohabitation as man and wife, a marriage solemnized in due form of law, although imperfect, because both or one of the parties, were incapable for want of age, of making a perfect marriage, whereby, notwithstanding such confirmation by assent and cohabitation, they should be subjected to indictment for living together in fornieátion, and their issue should be' deemed bastards. And, as we conceive, the correctness of this construction is put beyond the reach of doubt or question, by a comparison with other sections of the same statute, to wit,— sec. 9, “all marriages contracted after,” &o., “between persons nearer of kin than first cousins, shall be void;” sec. 7— “all marriages since,” &e., “between a white person and a free negro, or free person of color, to the third generation,
 
 shall be void ”
 
 See. 8. “No minister of the gospel or justice of the peace shall many a white person with an Indian, negro or free person of color to the third generation, knowing them to be so, upon pain of forfeiting,” &e. Thus ira the statute, some marriages are made
 
 void,
 
 and, in respeet to others, it is enacted, that the parties shall be incapable of contrae ting marriages. Why this change of expression, if the same idea was intended to be expressed? Taking into consideration the law as it was before settled, there is no rule of construction which would justify the Court in giving the same meaning .and effect, to modes of expression so different and suek a construction would shock common sense.
 

 On the argument,
 
 Gathings v.
 
 Williams, 5 Ired. Rep. 487, was cited, and the counsel relied on this passage ia the opinion : “ Where the marriage is between persons, one of whom, has no capacity to contract marriage at all, as where there is a
 
 want of age
 
 or understanding, or a prior marriage still subsisting, the marriage is void, absolutely, and from the beginning.” In that case, there was a prior marriage still subsisting, and
 
 tliejpoint
 
 presented was the effect of a second marriage, so what dropped from the Court in regard to a want of
 
 *198
 
 age or understanding, was an
 
 obiter dictum.
 
 There is » marked distinction. It may well be, that a second marriage, while the first is still subsisting, is void and incapable of confirmation, because it is so utterly denounced by the law, as to subject the party marrying a second time, to capital punishment as a felon, but a mere want of age or understanding rests on a different footing entirely.
 

 Crump
 
 v.
 
 Morgan, 3
 
 Ired. Eq. 91, was also cited. That was a case where the marriage was duly solemnized, but the woman was a lunatic at the time, and at no time afterwards was in the possession of her faculties, “so as to be capable of judging of her rights or interests or of making or confirming a contract.” So the very learned disquisition on the question, whether
 
 if she had been restored to sound mind,
 
 the marriage was such an one as could have been confirmed by her subsequent assent and cohabitation, was extrajudicial1, and in regard to it “ the doctors differ,” for Bishop in his learned treatise, sections 188, 189, 190, inclines to the opinion in his-comments on that ease, that such a marriage could be confirmed, and calls attention to the fact that the passage in “Paynter on marriage,” relied on in
 
 Crump
 
 v.
 
 Morgan,
 
 was misapprehended, for the author had' reference to marriages void for the want of due solemnity, as where the party officiating was not a minister of the gospel, or where there was the impediment of a former pre-existing; marriage, and he- establishes by the authorities cited, sections 122 and 123, that marriages under fraud, terror or duress, though generally spoken of in the books as void, are in effect, only voidable, and may be confirmed! by subsequent assent and voluntary cohabitation as man and wife. However this may be, we think it clear, that the statute ®uder consideration, does not abrogate-the principle of the common law in respect to marriages where both of the parties, or one of them, are under the age. of consent; and although the marriage is imperfect for the want of capacity, it may be confirmed, and the effect of the
 
 *199
 
 statute is only to change the age of consent so as to make it conform to our more northern latitude. There is no error.
 

 Per Curiam,
 

 Judgment affirmed.