Battle, J.
 

 The plaintiff in her bill, which was filed in the Court of Equity, for the county of Wake, alleged, that on the 30th day of April, 1861, the marriage ceremony was performed, in the city of Baleigh, between her and the defendant, James T. Morehead; that she had been ever since her birth, and was still, a resident of the city of Baleigh, in the county of Wake, and the defendant was a resident of the
 
 *361
 
 county of Guilford; that after cohabiting with the defendant some two or three weeks, she found him to be, and she averred that he was, utterly and incurably impotent; that in consequence of such impotency, the pretended marriage between her and the defendant was null and void; and she prayed that it might, by a decree of the Court, be declared null and void; and further, that she might have a decree divorcing her from the bonds of matrimony.
 

 The defendant demurred to the bill, for the want of jurisdiction in the court of equity for the county of Wake. The cause was set for hearing on the demurrer, and by consent was removed to the Supreme Court.'
 

 Our opinion being in favor of the defendant, upon the question of jurisdiction, we have deemed it proper to state only the facts which are necessary to raise it.
 

 That, as a general rule, an objection to the jurisdiction of the court of equity may be taken on a demurrer, when the facte appear upon the record, is settled. • Indeed, it is said by Mr. Adams, that want of jurisdiction is one of the most ordinary grounds of a demurrer in equity; Adams’ Eq. 833. The principle of the defense by demurrer is, that on the plaintiff’s own shewing, his claim eannot be supported, and that, therefore, it is needless for the defendantjo answer the bill. If the plaintiff show that the Court cannot entertain jurisdiction of his cause, there seems to us as much reason for permitting the defendant to urge that objection, as to insist upon any other, which is disclosed by the facts stated in the bill. The plaintiff’s counsel does not deny this; but insists that when the want of jurisdiction arises from the fact, that the suit is brought in the wrong county, the objection can only be taken by a plea in abatement, under an express provision, to that effect, in the Eevised Code, chapter 32, section 3, rule 14. The last clause of that rule does say, indeed, that if the suit be brought -in any other county than is therein prescribed^it “ may be abated on plea;” so it may, and so it must, ifflhe fact, that the suit is in the wrong county do not appear on the record ; but if the objection appear in the bill itself, a plea is unne
 
 *362
 
 cessary and a demurrer is proper to be used. It is well known that, in equity, the statute of limitations is generally used as a defense by a plea, but it is now held, that if bjr the plaintiff’s own showing, his equity is barred by the statute of limitation, no plea is necessary; see
 
 Whitfield
 
 v.
 
 Hill,
 
 5 Jones’ Eq. 321;
 
 Robinson
 
 v. Lewis, Busb. Eq. 58.
 

 We come now to the question, whether the suit was brought in the wrong county, and the solution of that depends upon the enquiry, whether a valid marriage was contracted by the performance of the marriage ceremony between the plaintiff and defendant, and if it were, what effect did it have upon the domicil of the parties. The counsel for the plaintiff contends,, that there was no marriage; that by reason of the defendant’s impotency, the performance of the marriage ceremony between the parties had no legal effect, and that, therefore, what passed between them was a mere nullity. This, we think, is a great mistake. Impotency is a good cause for a divorce
 
 a vinculo
 
 matrimonii, but, it does not, like idiocy or lunacy in one or both parties, make the alleged marriage a nullity
 
 ab initio.
 
 Mr. Blackstone, after stating that marriage is regarded by the law as a civil contract, and that to be valid, it must be between parties willing and able to contract and who do contract in proper forms and solemnities, says that, in general, all persons are able to contract themselves in marriage, unless they labor under some particular disabilities and incapacities. These disabilities are of two sorts ; first, such as are canonical and, therefore, sufficient, by the ecclesiastical laws, to avoid the marriage in the spiritual court; but these, in our' law, only make the marriage voidable, and not
 
 ipso facto
 
 void, until sentence of nullity be obtained. Of this nature are precontract, consanguinity or relation by blood and affinity, or relation by marriage and some particular corporal infirmities;” 1 Bla. Com. 434. After some other remarks about the nature of|these disabilities, the great commentator adds, But such marriages not being void
 
 ab mitio,
 
 but voidable only by sentence of separation, they are deemed valid to all civil purposes, unless such separation is actually made, during
 
 *363
 
 the life of the parties.” See also
 
 Elliott
 
 v.
 
 Gurr,
 
 2 Phil. Ec. Oases, 16 ; 1 Moore, 223; Noy 29 ; Cro. Car. 352 ; 1 Roper on H. and
 
 W,
 
 333. Among these disabilities it is seen, that “ some particular corporal infirmities” are mentioned. Thus, the impotency of the husband, at the time of the marriage, to consummate it, and still continuing, is a good ground for annulling it; 2 Phil. Ec. Oa. 10. But until a sentence of divorce is obtained, the marriage is regarded as valid and subsisting.
 
 Mr. Shelford
 
 says expressly, that “ canonical disabilities, such as consanguinity, affinity and certain corporal infirmities, only make the marriage voidable and not
 
 ipso facto
 
 void, until sentence of nullity be obtained, and for this, he cites 2 Phil. Ecc. Cases 19, 25.” If this were not so, the triennial cohabitation required by the Ecclesiastical courts (and which we presume our courts would be bound to insist upon) before they will entertain a suit for a divorce on account of impotency, would seem to be a strange requisition ; see Shelf, on' Mar. and Div. 203, (33 Law Lib. 171.)
 

 The second kind of disabilities, mentioned by Mr. Blackstone, are what he calls civil, that is, such as are enforced by the municipal laws. Among these are incapacities of a for*, mer subsisting marriage, and that of a want of reason. These make the marriage absolutely null and void
 
 ab initio,
 
 and the pretended marriage may be so treated without any sentence pronounced by a court; though in the case of a want of reason in one of the parties when the marriage was contracted, the Court will entertain a suit for a nullity of the marriage. This was done in the case of
 
 Johnson
 
 v.
 
 Kincaid,
 
 3 Ired. Eq. 470, and
 
 Crump
 
 v.
 
 Morgan,
 
 3 Ired. Eq. 91, referred to by plaintiff’s counsel. In the former of these cases, the pretended husband was an idiot, and in the latter, the wife was a lunatic at the time of the celebration of the marriage. In both cases, the alleged marriages were pronounced to have been nullities from the beginning, and the Court pronounced sentence, not of divorce, but of nullity. From what we have said, it is clear, that the performance of the marriage ceremony between the parties now before the Court made
 
 *364
 
 them, to all intents and purposes, man and wife, and they must so remain, until death or a divorce shall separate them.
 

 This being so, the only remaining inquiry is, what effect the marriage had upon the domicil of the parties : Upon this question, we think the law is well settled; in the case of
 
 Warrender
 
 v. Warrender, 9 Bligh. Rep. 89, before the House of Lords, it was laid down in the strongest terms, that the domi-cil of the husband drew to it, in law, that of the wife. That was the case of a suit for a divorce, and it was followed by another suit of the same kind, before the consistory court of London, in which Dr. Lushington held the same doctrine, 2 Curtis’ Rep. 35, (7 Eng. Ec. Rep. 139). It is unnecessary to multiply authorities upon this point, for the general rule seems to have been assumed to be, as we now state it, in the very case of
 
 Shonwald
 
 v.
 
 Shonwald,
 
 2 Jones’ Eq. 367, relied upon by plaintiff’s counsel to disprove it. In that case we decided, indeed, that upon the construction of the 7th section of 39th chapter of Eevised Code, a wife residing in another State, could not be considered as a resident of this State, for the purpose of suing her husband for a divorce in our courts. The language of the act, upon which the construction was placed, is as follows: “ Nor shall any person be entitled to sue, unless he or she shall have resided within the State three years
 
 immediately
 
 preceding the exhibition of the petition.” It was, undoubtedly, competent for the Legislature to enact that the actual residence of the wife, out of the State, should not be considered as a legal residence with her husband, in the State, for the purpose of enabling her to sue him in the courts of this State. That was the intent of the Legislature in the act to which reference is made, and the effect of the decision of
 
 Shonwald
 
 v.
 
 Shonwald,
 
 is to carry out that intent. In other respects, the rule remains unchanged, and where the parties reside in the State, the residence of the husband still remains the residence of the wife.
 

 It follows that as soon as the parties, in this case, were married, the plaintiff became, in law7, a resident of the county of Guilford, and according to the 14th Eule of the 3rd section of
 
 *365
 
 the32d chapter of the Kevised Code, her suit
 
 ought to have
 
 been instituted in the Court of Equity for that county.
 

 The demurrer to the bill, for the want of jurisdiction in the Court of Equity of Wake'county, is sustained, and tkfe bill dismissed.
 

 Per Curiam, Bill dismissed.