SALLIE A. LEA v. JAMES P. LEA.

*Marriage and Divorce—Alimony—Notice of Motion—Findings of Fact.*

1. An action to have a marriage declared void because of a pre-existing disqualification to enter into the marriage relation is an action for "*divorce*," and *alimony pendente lite* may be allowed.

2. An order of Court continuing the motion for alimony to a future term of Court, made in the presence of *counsel* for *both parties*, is sufficient *notice*, under the statute, of such motion.

3. A finding by the Judge that the facts set forth in a complaint are true is a sufficient finding of facts on such motion.

This was a Motion for Alimony *pendente lite*, heard before *Brown, J.*, at RANDOLPH Superior Court, Spring Term, 1889.

The plaintiff served notice on the defendant on the 21st day of September, 1888, to appear at Troy, Montgomery County on the 3d day of October, 1888, to show cause why alimony should not be allowed her, pending this suit. By agreement of counsel of plaintiff and defendant, the hearing was adjourned from Troy to Albemarle, in Stanly County, to be heard on the 17th day of October, 1888, on which day the defendant and his attorney were present and resisted said motion upon the ground that said motion could not be heard and no order could be made in said cause outside of Randolph County, where the cause was pending. Whereupon, his Honor *Judge Philips*, upon his own motion, and without the consent of the defendant, ordered the same to be transferred, to be heard on the third Monday in March, 1889, it being the 18th day of March, 1889, at Asheboro, in Randolph County. Without any further notice to the defendant, the plaintiff, in the absence of the defendant, on Thursday, the 21st day of March, 1889, called up the case and moved his Honor to proceed with the hearing of her motion to be allowed

alimony *pendente lite.* The defendant's counsel, being pres-
ent, objected to the Court's hearing or considering the
motion, on the ground that no notice had been given to the
defendant, as required by law. The Court proceeded to
consider and hear the motion, and the defendant excepted
to the same. Upon the hearing, the counsel for the defend-
ant resisted the application and order on the ground that
the plaintiff was not entitled to alimony; that it appeared
from the complaint and the evidence that she was not a
married woman, nor the wife of the defendant, and insisted
that the Court should so find and declare.

After hearing the case and considering the same, the Court
decreed alimony to the plaintiff, from which defendant
appealed.

The first cause of action alleged in the complaint charged
that the marriage ceremony was duly solemnized between
the plaintiff and defendant, in this State, on the 4th day of
May, 1887, the plaintiff believing that there was no obstacle
to the union, and that it was, in all respects, valid, but that,
in fact, the defendant was then married to a former wife,
still living, from whom he pretended to have obtained a
divorce in the State of Illinois; that the divorce, if ever
procured at all, was void, in that it was a fraud upon the
laws of this State, the defendant being, all the time the pro-
ceedings upon which it was alleged to be based, a citizen
and resident of North Carolina.

The second cause of action alleged, with great particu-
larity, long-continued cruel and inhuman treatment of plain-
tiff by defendant.

The prayer for relief was: (1) For divorce *a vinculo matri-
monii;* (2) for divorce *a mensa et thoro;* and (3) for alimony.

No counsel for the plaintiff.
*Mr. L. M. Scott,* for the defendant.

SHEPHERD, J.: The defendant denies his liability for alimony *pendente lite,* for the reason that this is not, technically, an action for divorce from the bonds of matrimony, but an action to declare a marriage void because of a prior existing marriage on the part of the defendant.

At common law, suits for nullity were freely entertained in the ecclesiastical courts, and, while they were unnecessary in cases like the present, so far as they affected the actual legal relations of the parties, it was deemed "expedient to procure a sentence to prevent the consequences which might, in future, take place from the death of witnesses, or other occurrences, rendering proof of the invalidity of the marriage difficult or impossible.  *  *  *  It is a matter of duty which the Courts owe to the public to declare the situation of the parties.  *  *  *  It may be necessary, for the convenience and happiness of families, and of the public likewise, that the real character of these domestic connections should be ascertained and made known." Shelford, Mar. and Div., 332. Appreciating these reasons, our Legislature has provided (*The Code,* § 1283) "that the Superior Court, in term-time, on application made as by law provided by either party to a marriage contracted contrary to the prohibition contained in chapter 42 (*The Code*), or declared void by said chapter, may declare such marriage void from the beginning."

Chapter 42, § 1810, of *The Code,* provides that all marriages "between persons, either of whom has a husband or wife living at the time of such marriage,  *  *  *  shall be void."

It was decided in *Taylor* v. *Taylor,* 1 Jones, 528, that the Courts of this State had no power to allow alimony *pendente lite,* but this relief was subsequently given by the Legislature in 1852, and the existing law upon the subject is to be found in *The Code,* § 1291, *et seq.,* which provides that such alimony may be given where any married woman shall apply to a

Court for a divorce from "the bonds of matrimony or from bed and board."

It is insisted by the defendant that, as the marriage was void, there were no "bonds of matrimony" to dissolve, and, therefore, the plaintiff's case is not within the statute. We cannot accept this restricted interpretation. The words "from the bonds of matrimony," *a vinculo matrimonii,* have a well known significance at common law, and it must be presumed that it was in this sense that they were used by the Legislature.

At common law, no divorce *a vinculo* could be granted, except for causes existing previous to the marriage, and which "rendered the marriage unlawful *ab initio.*" "In such cases," says Blackstone, 2 vol., 94, "the law looks upon the marriage to have been *always null and void,*   *   *   * and decrees not only a separation from bed and board, but *a vinculo matrimonii* itself." In view of this high authority, the argument of the defendant, founded upon the strict and literal meaning of the words of the statute, must fall to the ground. Pre-contract of marriage is, in common legal parlance, considered as a cause for *divorce.* For example, we have the able and discriminating Mr. Irving Browne, in his work on "Domestic Relations," 61, using the following language: "The law recognizes three kinds of divorces—first, divorces on the ground of the nullity of the marriage contract.   *   *   *   For this *divorce* there are, generally, five causes—lack of legal age, *former marriage.*" &c.

We could, if necessary, add a great number of authorities in which the word "divorce" is used in this comprehensive sense, but it is unnecessary to do so, as we have a decision in our own reports which, we think, fully settles the question. It is the case of *Johnson* v. *Kincade,* 2 Ired. Eq., 470. There the marriage was declared a *nullity* because of the mental incapacity of the plaintiff. There was no statute conferring

jurisdiction upon the Courts in cases of judicial separation, except ch. 39, Rev. Stat. This provided that the Superior Courts of law and equity should have sole and original jurisdiction "in all cases of application for divorce and alimony." The causes specified were, impotency at the time of the contract, adultery, and "any other just ground of *divorce.*"

It is clear, from the above language, that unless the case could be brought within the meaning of the word " divorce," the Court had no jurisdiction. C. J. RUFFIN, after discussing other parts of the chapter, says: " It is plain, therefore, that the act covers the case in which the parties contracted by show of marriage but were never in law and truth married, for want of capacity, for which reason the sentence pronounces the marriage *null and void,* but *because* there is a marriage *de facto* the sentence proceeds to dissolve *that."* The Court therefore pronounces that the marriage in fact, solemnized between Reese Johnson and Anna Kincale, is " in law null and void for the want, at the time of solemnizing the same, of mental capacity on the part of the said Reese sufficient to understand the nature of, and assent to, such a contract, and that the said Reese ought to be, and is, set free and *divorced* from the said Anna." Here we have the Court granting a *divorce* on the ground that the contract was null and void. We think that these authorities sustain us in holding that the words of the statute embrace all cases where there has been a *de facto* marriage.

The defendant further contends that, inasmuch as the plaintiff *alleges* that the marriage is void, she is estopped. This is but another form of the foregoing objection, and is therefore untenable. If, as we have seen, her case is within the statute allowing alimony, it would be strange indeed if she is to be deprived of it by alleging the very fact upon which her cause of action depends. All that the law requires is the proof or admission of a *de facto* marriage. This suggestion of estoppel comes with little grace from one

who has beguiled the plaintiff into a false marriage, and who, when she is compelled to leave him by reason of his cruel treatment, as well as the discovery of her forlorn legal *status*, detains from her what little property she owns.

Such are the facts found by his Honor for the purpose of this motion. They should not of course work prejudice to the defendant upon the trial of his case before the jury.

In further support of the view we have adopted, we add the authority of Shelford Mar. & Div. 587, which says that, "after proof of a marriage in fact, alimony pending the suit will be allotted, whether commenced by or against the husband, not only in cases of impotency, but in all cases of nullity of marriage." To the same effect is 2 Bishop Mar. & Div., 402, where the learned author fully sustains us and successfully refutes the opposing view. This author says that the right to alimony *pendente lite* grows out of the changed pecuniary relations of the parties, by which the property of the wife is practically placed under the control of the husband, and this whether the marriage is valid or *de facto* only.

This, as we have seen, is well illustrated in the present case, and we think that the plaintiff's claim for alimony *ad interim* is as meritorious as it would be were she suing for any other cause of divorce.

2. The defendant further objects to the order of his Honor on the ground that notice of this motion was not given as required by law. Granting that the motion could only have been heard in Randolph County, where the action was pending, we are still unable to perceive any force in the defendant's exception. It appears that the defendant and his counsel were both present in Stanly County before *Judge Philips* when he made the order continuing the motion to be heard at the March Term of the Superior Court of Randolph County. No particular day was named, but the defendant had notice that the motion would be heard at that

term. The statute does not require that a day shall be set when a motion in the cause is to be heard at term. It only provides that five days' notice shall be given, and we think that this requirement was fully complied with in the present case. It is not insisted that the defendant did not, in fact, know that his case would be heard during the term. On the contrary, his attorney was present making the objection, and also insisting, that the plaintiff was not entitled to alimony because there was no valid marriage. We are entirely satisfied that the defendant had actual notice, and could have filed affidavits, or made any other defence, had he desired to do so.

3. It is further objected that no facts were found by his Honor. This is incorrect, as the Court found " the facts set forth in the complaint to be true." These facts are amply sufficient to sustain the order for alimony *pendente lite.* Upon a careful review of the whole case we are of the opinion that there is.

Affirmed.