## W. L. WATTERS v. LULA WATTERS.

(Filed 17 March, 1915.)

1. **Divorce—Marriage—Mental Incapacity—Voidable Contracts—Ratification—Interpretation of Statutes.**

    Where one of the contracting parties to a marriage is mentally incapable in law, at the time, to make the contract, it does not *ipso facto* render the ceremony void, but it is only voidable until set aside by an appropriate action, which will not be decreed when it appears that the party seeking the relief has not been misled or in any manner deceived at the time and has knowingly continued the relationship for years, resulting in the birth of several children of the marriage, for therein he will be held to have ratified the contract of marriage. Revisal, secs. 1560, 2083.

2. **Divorce—Subsequent Incapacity—Interpretation of Statutes.**

    Insanity afterwards afflicting a party to a contract of marriage is not a ground for divorce. Revisal, secs. 1560, 2083.

3. **Divorce—Mental Incapacity—Fraud.**

    A marriage contract will not be set aside by the court on the ground of mental incapacity of a party except at the instance of the other party thereto, except when he has entered therein or was induced thereto by reason of fraud, without knowledge of the existing conditions.

4. **Divorce—Void Marriages—Interpretation of Statutes.**

    Construing Revisal secs. 1560 and 2083 together, it is held that the only marriages that are void *ab initio* are those within the proviso of section 2083, *i. e.*, where one of the parties was a white person and the other a negro or an Indian or of negro or Indian descent to the third generation, inclusive, or bigamous marriages.

APPEAL by plaintiff from *Daniels, J.,* at September Term, 1914, of DUPLIN.

*Stephens & Beasley for plaintiff.*
*Thad Jones for defendant.*

CLARK, C. J. This action was instituted August, 1911, to declare void a marriage celebrated between the plaintiff and defendant on 28 July, 1895, upon the ground that at the time of the marriage the defendant Lula Watters was incapable of making or entering into the contract of marriage, for the want of will or understanding. The plaintiff lived with the defendant from the date of the marriage till September, 1903, at which time she was declared a lunatic and placed in a hospital at Goldsboro, where she has remained since, demented and incurable. While the plaintiff lived with his wife she became the mother of five children. There was evidence on the part of the defendant that at the date of the marriage she had sufficient mental understanding to make and enter into a marriage contract. There was also evidence that on the date of the

marriage she was weak-minded, and that her condition grew worse until she was finally sent to the hospital. Upon the issue submitted to the jury, they found that the defendant on the date of her marriage had sufficient mental understanding to make and enter into a marriage contract.

There are two exceptions, both to the charge. There is, however, only one point which is clearly presented by the second exception, which is because the court charged: "If the jury shall find from the evidence that the defendant's mind was so weak at the time she was married to the plaintiff that she was not able to understand the marriage contract, and that she did not have sufficient mental capacity to understand the relations into which she was then entering, and that the plaintiff at the time was not aware of her mental condition, and that he afterwards discovered her mental condition, and that after discovering the same he continued to live with her, and to have children by her, then the plaintiff would be estopped to bring and maintain this suit, and the jury will answer the first issue 'No.'"

Revisal, 2083, "Who may not marry," specifies the instances in which parties are forbidden to marry, and that such marriages "shall be void," naming among the instances, "between persons either of whom is at the time . . . incapable of contracting for want of will or understanding." But mentions, also, among others, where the male person is under 16 or the female person is under 14 years of age, and there is this proviso to the whole section: "No marriage followed by cohabitation and birth of issue shall be *declared void* after the death of either of the parties for any of the causes stated in this section, except for that one of the parties was a white person and the other a negro or an Indian or of negro or Indian descent to the third generation, inclusive, and for bigamy."

It will be seen from this that the only marriages that are absolutely void are those in the *proviso.* As to the others, they are not void *ipso facto,* but must be declared so—that is, they are voidable. In *Koonce v. Wallace,* 52 N. C., 194, it is said that when at the time of the marriage the female was under 14 years of age, and the parties continued to live together as man and wife after that age, this amounted to a confirmation of the marriage.

In *S. v. Parker,* 106 N. C., 713, it is declared that the only marriages which were absolutely void are those between a white person and a negro or an Indian, and bigamous marriages; the others need to be declared void. If the parties after arriving at the specified age of consent continue to live together as man and wife, this is a ratification.

This view is clearly set out in Revisal, 1560, under authority of which this action is brought, and specifies "What marriages may be declared void." It provides that the Superior Court, on application of "either party to a marriage contracted contrary to the prohibitions contained in

the chapter entitled 'Marriage,' or declared void by said chapter, may declare such marriage void from the beginning, subject, nevertheless, to the proviso contained in said chapter." This recognizes that the only absolutely void marriages are those named in the proviso to Revisal, 2083, and that the others need to be *"declared void."* Though the declaration may be, if granted, that the marriage was void *ab initio,* such marriage is valid until this declaration is made by the court after hearing and trial.

In *Lea v. Lea,* 104 N. C., 603, it is held that an action to have a marriage declared void because of preëxisting disqualifications to enter into marriage relations is an action for divorce. It is only when the marriage comes within the proviso to Revisal, 2083, that the marriage is absolutely void. In other cases the marriage can be ratified by the conduct of the party, who is entitled to make the application for such divorce. The ground for such application can be put forward only by the party who has been imposed on and who has not subsequently ratified the contract and waived the disqualification.

One who was himself competent to contract the marriage, or who has afterwards ratified it, cannot be heard to ask for a divorce on the ground of his own misconduct or fraud in contracting the marriage. In this case there is no contention that the husband was not competent to make the marriage nor that he was deceived, and he has ratified it to the fullest extent. He lived with his wife for eight years, during which time she bore him five children. There is no allegation nor proof of any fraud or force to trap him into the marriage.

There are cases in which marriages have been set aside on the ground that one of the parties seeking it was mentally incapable of contracting the marriage. But in all cases the action was brought at the instance of the party imposed on. In *Crump v. Morgan,* 38 N. C., 91, the action was brought by the guardian of the wife, and it appeared that she had been married clandestinely and under duress by a young man 20 years of age; that the woman was nearly double his age, was notoriously a lunatic and under the care of her guardian, and that she was married by the defendant with knowledge of that fact and in the manner stated in order to get possession of her property. The decree in that case, drawn by *Chief Justice Ruffin,* is clear and full, reciting the facts and pronounces her to be free and divorced from the defendant and of course that the marriage was null and void *ab initio.*

In *Sims v. Sims,* 121 N. C., 297, the action was brought by the guardian of the lunatic, and it appeared that she had been declared a lunatic three days before the marriage, which was declared void *ab initio.* In that case numerous authorities were cited to the same effect. It was held that even though the party seeking relief had not been adjudged a luna-

tic at the time of the marriage, the court had power to declare the marriage a nullity, citing *Johnson v. Kincade,* 37 N. C., 470; *Setzer v. Setzer,* 97 N. C., 252; *Lea v. Lea,* 104 N. C., 603. Though the court has jurisdiction to declare a marriage in proper cases void *ab initio,* they are not *ipso facto,* but must be so declared by a decree of the court, for only in the instances set out in the *proviso* to Revisal, 2083, can they be treated as void in a collateral proceeding. *Setzer v. Setzer, supra.*

In all the cases of our Reports it will be found that the decree was made at the instance of the next friend or guardian of the party wronged, or incompetent. In *Smith v. Morehead,* 59 N. C., 360, the action was brought by the wife herself, who had been imposed upon by fraud, though not a lunatic.

In all cases on the subject, as already stated, though the marriage is declared null and void *ab initio,* it is not held that the marriage relation was dissolved *ipso facto,* but only by the declaration of the court and at the instance of the party entitled to the relief by reason of the fraud of the other party. His acquiescence with full knowledge and capacity is a ratification. *Taylor v. White,* 160 N. C., bottom of p. 41.

Contracts, even conveyances, by persons of nonsane memory "are voidable, but not void." 2 Black. Com., 291; 2 Kent Com., 451, and other authorities cited in *Odom v. Riddick,* 104 N. C., 521. Such contracts can be set aside by action in behalf of the lunatic only, and not by the other party. As in the contract of marriage, the contract is then declared null and void *ab initio,* in behalf only of the person *non compos mentis.*

It is true that, in this case, the plaintiff avers that the defendant's mind at the time of the marriage was such that she was "incapable of making or entering into the contract of marriage with the plaintiff, for the want of will or understanding, which said want of will or understanding was unknown to the plaintiff at the time of the marriage," but at the trial he neither offered evidence nor tendered an issue as to the allegation of want of knowledge on his own part, though he was a witness in his own behalf. He merely says that "soon after the marriage plaintiff discovered that defendant's mind was wrong, and it continued to grow worse." He does not allege nor testify that her mental condition was concealed from him nor that there was any fraud or imposition practiced upon him. Though he testified at the trial that his wife did not have mental capacity to enter the contract of marriage, he continued to remain with her for eight years and until she had borne five children. By his conduct he is estopped to assert that during all those years he did not ratify and confirm the marriage relation. The mental condition of his wife evidently became worse from time to time, whatever it may have been at the date of the marriage and whatever the cause. Of this

we have no information, nor can the Court go into that matter unless our statute made insanity subsequent to the marriage ground of divorce.

The condition of the plaintiff is one that calls for sympathy. But he took his wife "for better or for worse," and our statute does not afford him the right to a divorce because of her present unfortunate condition. As the court charged, he is estopped, by maintaining the marital relation for so many years, to now assert that she was imbecile or lunatic at the time of the marriage.

No error.