DAVID R. IVERY v. GLADYS W. IVERY, EXECUTRIX OF THE ESTATE OF PAUL F. IVERY, AND, GLADYS W. IVERY, INDIVIDUALLY.

(Filed 27 February 1963.)

**1. Appeal and Error § 51—**

When defendant introduces evidence, only his motion to nonsuit made at the close of all the evidence is to be considered.

**2. Wills § 7—**

The word "divorce" is used in G.S. 31-5.4 in its general and comprehensive sense, and the statute effects a revocation of all provisions of a will in favor of testator's spouse upon the dissolution of the marriage either by absolute divorce or by annulment.

**3. Marriage § 2;   Wills § 8—**

It is not required that the husband's probated will leaving his property to his wife be first set aside in a caveat proceeding in order for the husband's next of kin to maintain an action to have the marriage declared void for mental incapacity of the husband to contract the marriage, since the provisions of the will in favor of the wife are revoked by statute if the marriage is annuled.

**4. Marriage § 2—**

The marriage of a person incapable of contracting for want of understanding is not void *ipso facto;* but, if and when declared void in a legally constituted action, such marriage is void *ab initio*; and such marriage may be declared void in an action instituted during the lifetime of the parties to the marriage by a guardian for the alleged incompetent, or by such incompetent if and when he should become mentally competent to do so.

**5. Same;   Abatement and Revival § 14—**

The marriage of a person incapable of contracting for want of understanding may not be declared void after the death of either party to the marriage when the marriage is followed by cohabitation and the birth of issue, but when there is no issue, such marriage may be declared void in an action instituted after the death of the incompetent by a person or persons whose legal rights depend upon whether the marriage is valid or void. G.S. 51-3; G.S. 50-4.

**6. Marriage § 2;   Insane Persons § 8—**

The test of mental capacity to contract a marriage is the capacity to understand the special nature of the marriage contract and the duties and responsibilities which it entails, and an instruction which, in effect, includes as an element of mental capacity knowledge of the provisions of our statutory law relating to the revocation of a will by marriage and relating to the persons who shall succeed to the estate of an intestate, must be held for prejudicial error.

APPEAL by defendant from *McConnell, Special Judge,* January 22, 1962, Special "A" Civil Term of MECKLENBURG, docketed and argued as No. 250 at Fall Term 1962.

This action was instituted July 28, 1960, to annul and declare void *ab initio* the alleged purported marriage of Paul F. Ivery and Gladys W. Ivery.

Paul F. Ivery, plaintiff's brother, died July 7, 1960.

It was alleged and admitted: (1) that Paul F. Ivery, on or about May 12, 1960, "entered into a marriage ceremony with the defendant, Gladys W. Ivery"; and (2) that defendant "is the duly appointed and acting Executrix of the Estate of Paul F. Ivery, having been appointed as such on or about the 20th day of July, 1960."

Plaintiff alleged Paul F. Ivery, at the time of said marriage ceremony, was mentally incompetent to enter into a marriage contract; that defendant had knowledge of his mental incompetency; and that defendant "persuaded and induced . . . Paul F. Ivery to enter into said marriage ceremony with her . . . to get all the property of the said Paul F. Ivery for herself." Defendant by answer denied these allegations.

The marriage ceremony was performed May 12, 1960, in accordance with all legal formalities.

On May 12, 1960, Paul F. Ivery was living alone. He had lived with his first wife and with his mother. His mother died in February, 1959, and "(h)is first wife had died a couple of years before."

Paul F. Ivery had no children. Plaintiff is his nearest blood kin.

On June 3, 1960, Paul F. Ivery visited the neurosurgeon who had removed a tumor from his brain in January, 1957. On June 10, 1960, Paul F. Ivery was taken to a hospital where he remained until his death on July 7, 1960.

Much evidence was offered by plaintiff and by defendant. The testimony of defendant's witnesses was in sharp conflict with the testimony of plaintiff's witnesses. A review of the evidence is unnecessary to an understanding and the disposition of the crucial questions presented by defendant's appeal.

The court submitted, and the jury answered, the following issue: "Did Paul F. Ivery have sufficient mental capacity to enter into a marriage contract with Gladys W. Ivery on May 12, 1960? Answer: No."

On said verdict, the court entered judgment "that the marriage entered into between Paul F. Ivery and Gladys W. Ivery on May 12, 1960, be and it is hereby declared null and void, and the said marriage is hereby dissolved AB INITIO, and the parties to said marriage ceremony are hereby set free and divorced therefrom as though it had never been entered into."

The court entered a separate order providing that, pending defendant's appeal and until otherwise ordered by the court, "the defendant is hereby restrained and enjoined from disposing of the real estate of which Paul F. Ivery was seized and possessed and the personal property owned by him, at the time of his death, or from attempting or undertaking to do so."

Defendant excepted to said judgment and appealed.

*Robert G. Sanders and J. C. Sedberry for plaintiff appellee.*
*B. F. Wellons and Brock Barkley for defendant appellant.*

BOBBITT, J.  Defendant's Assignments of Error Nos. 1 and 5 are based on his exceptions to the overruling of his motions for judgment of nonsuit. The only motion to be considered is that made by defendant at the conclusion of all the evidence. G.S. 1-183; *Spaugh v. Winston-Salem,* 249 N.C. 194, 105 S.E. 2d 610.

The evidence, when considered in the light most favorable to plaintiff, was sufficient to support a finding that Paul F. Ivery, deceased, at the time of the marriage ceremony on May 12, 1960, was mentally incapable of contracting a valid marriage. Indeed, defendant does not contend otherwise.

Defendant proffered as evidence the record of the proceedings before the Clerk of the Superior Court of Mecklenburg County showing the probate on July 20, 1960, in common form, as the last will and testament of Paul F. Ivery, deceased, of a paper writing dated May 16, 1960, in which Gladys W. Ivery is named sole beneficiary and sole executrix. Plaintiff's objection to the admission of this record was sustained and defendant excepted. (Note: Plaintiff's counsel stated that no caveat had been filed.)

Defendant contends plaintiff cannot maintain this action unless and until the said will is attacked and set aside in a caveat proceeding. The proffered evidence as to a probated will of Paul F. Ivery, deceased, was *excluded* and therefore not for consideration in passing upon defendant's said motion for judgment of nonsuit. Even so, whether the probated will, if admitted, would bar plaintiff's action is discussed in the briefs. The respective contentions relate to the proper interpretation of the statute (Session Laws 1953, c. 1098, s. 6) now codified as G.S. 31-5.4, which provides:

"§ 31-5.4. Revocation by divorce.—Dissolution of marriage by absolute divorce after making a will does not revoke the will of any testator but it revokes all provisions in the will in favor of the testator's spouse so divorced, including, but not by way of limitation, the appointment of such spouse as executor or executrix."

Defendant contends the quoted statute refers expressly and solely to the *dissolution* of a marriage by absolute *divorce* and is not applicable where a marriage is annulled. Plaintiff contends the word "divorce," as used in the quoted statute, includes the *annulment* as well as the dissolution of a marriage.

The technical distinctions between an action for absolute divorce and a suit for annulment are well known and need not be restated. 17 Am. Jur., Divorce and Separation § 3; 27A C.J.S., Divorce § 1; Nelson, Divorce and Annulment, Second Edition, Volume 3, § 31.04; *Pridgen v. Pridgen,* 203 N.C. 533, 166 S.E. 591; *Sawyer v. Slack,* 196 N.C. 697, 146 S.E. 864.

In *Johnson v. Kincade* (1843), 37 N.C. 470, this Court held the statute conferring jurisdiction "in all cases of applications for divorce" conferred jurisdiction over all matrimonial causes, including "the jurisdiction to pronounce the nullity of a marriage *de facto* for want of capacity."

In *Lea v. Lea,* 104 N.C. 603, 10 S.E. 488, the action was "to declare a marriage void because of a prior existing marriage on the part of the defendant." The question was whether the court could award alimony *pendente lite* to the plaintiff under a statute providing for the award of alimony *pendente lite* where a married woman applied to a court for a divorce from "the bonds of matrimony or from bed and board." It was held the word "divorce" was used in a general and comprehensive sense and included an action for the annulment of a marriage. Hence, the award of alimony *pendente lite* was upheld.

In *Taylor v. White,* 160 N.C. 38, 75 S.E. 941, and in *Watters v. Watters,* 168 N.C. 411, 84 S.E. 703, this Court, citing *Lea v. Lea, supra,* while recognizing the technical distinctions, refers to an annulment of a marriage as coming under the general heading of divorce.

In *Sawyer v. Slack, supra,* this Court, in opinion by Connor, J., said: "An action to annul a marriage for statutory reasons is in the nature of an action for divorce."

In enacting G.S. 31-5.4, we think it clear the General Assembly used the word "divorce" in its general and comprehensive sense, that is, as denoting a judgment or decree by which a marriage is dissolved or annulled, rather than in its limited and technical sense. This being true, an attack on the (proffered) probated will is not a prerequisite to plaintiff's right to maintain this action. An annulment of the marriage of Paul F. Ivery, deceased, and defendant would, under G.S. 31-5.4, revoke all provisions of said will in favor of defendant. In such event, the heir(s) at law and next of kin of Paul F. Ivery, deceased, would be entitled to his estate.

The more difficult question presented by defendant's motion for judgment of nonsuit is whether the marriage of Paul F. Ivery and defendant is subject to attack *after* Paul F. Ivery's death.

"The question whether a suit to annul a marriage can be instituted and maintained after the death of one of the parties to the marriage

or, if instituted prior to death, may be continued or revived by or against a representative of the deceased, resolves itself into inquiry whether the marriage is void in the true sense or voidable only. The invalidity of a marriage which is absolutely void or void ab initio may be maintained in a proceeding between any proper parties, either in the lifetime, or after the death, of the supposed husband or wife, and whether the question arises directly by petition for annulment or collaterally in other proceedings, at least in the absence of a statute requiring the action to be brought in the lifetime of both parties. But the right to annulment of a marriage which is voidable only is a personal right and proceedings for annulment must be brought during the lifetime of both parties to the marriage." 4 Am. Jur. 2d, Annulment of Marriage § 69; Annotations, "Right to attack validity of marriage after death of party thereto," 76 A.L.R. 769 and 47 A.L.R. 2d 1393.

At common law, the marriage of a person who was mentally incompetent to enter into the marriage was void and open to attack after the death of either or both of the parties. 76 A.L.R. 772; 47 A.L.R. 2d 1396; *Gathings v. Williams*, 27 N.C. 487. In each jurisdiction decision as to what extent, if any, the rule of the common law has been superseded or modified depends upon the statutes of such jurisdiction. Too, the significance of each court decision must be considered in relation to the statutory provisions then in force.

In *Pridgen v. Pridgen, supra,* the action was to annul a pretended marriage between the plaintiff and the defendant on the ground the defendant had a living husband at the time the ceremony between the plaintiff and the defendant was celebrated. While mindful that this action was to annul a pretended marriage by a party thereto on the ground it was bigamous, the following portion of the opinion of Adams, J., is pertinent:

"Between void and voidable marriages the law recognizes a distinction which applies to the status of the parties before the marriage relation is dissolved. A voidable marriage is valid for all civil purposes until annulled by a competent tribunal in a direct proceeding, but a void marriage is a nullity and may be impeached at any time. Schouler's Marriage, etc., sec. 1081; *Johnson v. Kincade,* 37 N.C. 470; *Crump v. Morgan,* 38 N.C. 91; *Williamson v. Williams,* 56 N.C. 446; *Taylor v. White,* 160 N.C. 38. In *Gathings v. Williams, supra,* the principle is stated in these words: 'Where the marriage is between persons, one of whom has no capacity to contract marriage at all, as where there is want of age ('want of age' being obiter, *Koonce v. Wallace,* 52 N.C. 194), or understanding, or a prior marriage still

subsisting, the marriage is void absolutely and from the beginning, and may be inquired of in any court. For, although in such case there may be a proceeding in the ecclesiastical court, it is not to dissolve the marriage, but merely, for the convenience of the parties, to find the fact and declare the marriage thereupon to have been void *ab initio,* and no civil rights can be acquired under such a marriage. It is said to be no marriage, but a profanation of marriage, and the *factum* is a nullity.'

"The General Assembly has provided that all marriages between persons either of whom has a husband or wife living at the time of such marriage shall be void, and that the aggrieved party may seek relief in the Superior Court, which has succeeded to the functions of the ecclesiastical courts of England. C.S., 1658, 2495; *Gathings v. Williams, supra; Johnson v. Kincade, supra; Setzer v. Setzer,* 97 N.C. 252; *Watters v. Watters,* 168 N.C. 411. The plaintiff accordingly brought suit, not for divorce, but to have the marriage relation between the defendant and himself adjudged void from the beginning, on the ground that at the time their marriage was solemnized the defendant had a husband living. *Taylor v. White, supra.*"

The statutory provisions in effect on May 12, 1960, now codified as G.S. 51-3 and G.S. 50-4, which, in all respects presently pertinent, were enacted as Sections 2 and 33, respectively, of Chapter 193, Public Laws of 1871-2, are as follows:

"§ 51-3. Want of capacity; void and voidable marriages.— *All marriages* between a white person and a negro or Indian, or between a white person and person of negro or Indian descent to the third generation, inclusive, or between a Cherokee Indian of Robeson County and a negro, or between a Cherokee Indian of Robeson County and a person of negro descent to the third generation, inclusive, or between any two persons nearer of kin than first cousins, or between a male person under sixteen years of age and any female, or between a female person under sixteen years of age and any male, or between persons either of whom has a husband or wife living at the time of such marriage, or *between persons either of whom is at the time* physically impotent, or is *incapable of contracting from want of will or understanding, shall be void*: Provided, double first cousins may not marry; and provided further, that no marriage followed by cohabitation and the birth of issue shall be declared void after the death of either of the parties for any of the causes stated in this section, except for that one of the parties was a white person and the other a negro or Indian, or of negro or Indian descent to the third generation, inclusive, and for bigamy; provided further, that no

marriage by persons either of whom may be under sixteen years of age, and otherwise competent to marry, shall be declared void when the girl shall be pregnant, or when a child shall have been born to the parties unless such child at the time of the action to annul shall be dead. A marriage contracted under a representation and belief that the female partner to the marriage is pregnant, followed by the separation of the parties within forty-five (45) days of the marriage which separation has been continuous for a period of one year shall be voidable: Provided, that no child shall have been born to the parties within ten (10) lunar months of the date of separation." (Our italics)

"§ 50-4. What marriages may be declared void on application of either party.—The superior court in term time, on application made as by law provided, by either party to a marriage contracted contrary to the prohibitions contained in the chapter entitled Marriage, or declared void by said chapter, may declare such marriage void from the beginning, subject, nevertheless, to the second proviso contained in § 51-3."

The statute now codified as G.S. 51-3 declares all marriages in violation of its provisions "shall be void." The second proviso declares "no marriage followed by cohabitation and the birth of issue shall be declared void *after the death of either of the parties for any of the causes stated in this section,* except for that one of the parties was a white person and the other a negro or Indian, or of negro or Indian descent to the third generation, inclusive, and for bigamy." (Our italics)

In *Baity v. Cranfill,* 91 N.C. 293, this Court held the authority conferred upon the court by the statute now codified as G.S. 50-4 was so limited by the second proviso of the statute now codified as G.S. 51-3 as to deprive the court of the power to declare void the marriage of uncle and niece, "nearer of kin than first cousins," after the husband's death, when their marriage was followed by cohabitation and the birth of issue.

In *Setzer v. Setzer, supra,* the plaintiff's action was against the administrator of his father's estate and a surety on the administration bond. The defendants alleged and the jury found that plaintiff's father did not have sufficient mental capacity to understand and enter into the marriage contract at the time of its solemnization. The defendants contended the pretended marriage was void and that the plaintiff, being illegitimate, was not entitled to a distributive share in his father's estate. This Court held, citing *Baity v. Cranfill, supra,* the marriage of plaintiff's parents followed by their cohabitation and the birth of issue (the plaintiff) was not subject to attack on the

ground of alleged mental incapacity after the intestate's death and that the issue as to the mental capacity of the plaintiff's father at the time of the marriage should not have been submitted.

It is noted that the second proviso of G.S. 51-3 does not apply to bigamous marriages. Actions to annul a marriage on the ground it was void because the defendant at the time of the ceremony had a living wife (or husband) include the following: *Pridgen v. Pridgen, supra; Taylor v. White, supra; Lea v. Lea, supra.*

Although G.S. 51-3 provides that all marriages "between a male person under sixteen years of age and any female, or between a female person under sixteen years of age and any male, . . . shall be void," it is well established that such marriages are voidable rather than void. *Sawyer v. Slack, supra; Watters v. Watters, supra; S. v. Parker,* 106 N.C. 711, 11 S.E. 517. *This was the rule of the common law. Koonce v. Wallace, supra.* As stated by Connor, J., in *Sawyer v. Slack, supra:* ". . . even where the statute declares a marriage void, because one of the parties thereto was under the age at which he or she might lawfully marry, the word 'void,' used in the statute, will be construed to mean 'voidable,' thus rendering the marriage valid until it has been declared void by a court of competent jurisdiction in an action directly attacking the validity of the marriage. (Citation) It has been held by this Court that a marriage which is not void, *ab initio,* but merely voidable, because one of the parties thereto was at its date under the age at which he or she might lawfully marry, may be ratified by the subsequent conduct of the parties in recognition of the marriage. (Citations)" Presumably, these decisions caused the codifier to include the word "voidable" in the caption of G.S. 51-3.

In *Watters v. Watters, supra,* Clark C.J., referring to the statute now codified as G.S. 50-4, says: "This recognizes that the only absolutely void marriages are those named in the proviso to Revisal, 2083 (now G.S. 51-3), and that the others need to be *'declared void.'* Though the declaration may be, if granted, that the marriage was void *ab initio,* such marriage is valid until this declaration is made by the court after hearing and trial." Again: "Though the court has jurisdiction to declare a marriage in proper cases void *ab initio,* they are not *ipso facto,* but must be so declared by a decree of the court, for only in the instances set out in the *proviso* to Revisal, 2083, can they be treated as void in a collateral proceeding."

Our decisions are inconclusive as to whether a marriage contracted when a party thereto is "incapable of contracting for want of . . . understanding" is void or voidable.

In *Watters v. Watters, supra,* it was held that the husband could not maintain an action to annul the marriage on the ground his wife was

incapable of entering into a contract of marriage for want of understanding. It appearing that the marriage was followed by many years of cohabitation and the birth of five children, it was held the plaintiff was estopped to assert the invalidity of the marriage.

In *Sims v. Sims,* 121 N.C. 297, 28 S.E. 407, the action was by the guardian of a woman who had been adjudged a lunatic to annul a marriage she thereafter purported to enter into with the defendant. In the opinion of Clark, J. (later C.J.), it is stated: "Indeed, the marriage at the time of a legally declared lunacy, being a nullity, could only have been remedied by proceedings to set aside the inquisition of lunacy for fraud or other good ground, or by a new marriage, if the lunatic is since found to be restored. *The void marriage on account of lunacy could not be cured merely by cohabitation after restoration.* Marriages entered into by parties under the legal age, however, being not void, but voidable, can be validated by cohabitation after arrival at the marriageable age." (Our italics) The opinion concludes: "The jury found, further, that Nancy E. Sims did not have mental capacity to enter into the marriage with the defendant on 14 November, 1893, but this was unnecessary, as the marriage with a declared lunatic was *ipso facto* void. *Crump v. Morgan, supra.*"

We reach these conclusions:

1. Under the rule of the common law as modified by our statutes, the marriage of a person incapable of contracting for want of understanding is not void *ipso facto;* but, if and when declared void in a legally constituted action, such marriage is void *ab initio.*

2. Such marriage, when followed by cohabitation and the birth of issue, may not be declared void after the death of either of the parties.

3. An action to declare such marriage void may be instituted in the lifetime of the parties thereto by a guardian for the alleged mentally incompetent or by such mentally incompetent if and when he (she) becomes mentally competent to do so; and, unless such marriage is followed by cohabitation *and* the birth of issue, such action may be instituted after the death of such mentally incompetent by a person or persons whose legal rights depend upon whether such marriage is valid or void.

In the instant case, the marriage of Paul F. Ivery and defendant on May 12, 1960, was followed by cohabitation but not by birth of issue. Hence, the second proviso of G.S. 51-3 does not apply. Therefore, under the applicable legal principles, plaintiff is entitled to prosecute this action for annulment upon allegation and proof that he is the brother and heir at law of Paul F. Ivery, deceased.

Although defendant's motion for judgment of nonsuit was properly overruled, we are constrained to hold that she is entitled to a new trial on account of prejudicial error in the charge.

Defendant excepted to and assigns as error these excerpts from the charge:

"(e) Now when they become husband and wife, what are the consequences of that contract? As we know the husband has the duty to support and maintain his wife and family. But in addition to that, there are certain instances of marriage which also occur and which have been pointed out from the evidence in this case. Section 31-5.3 of the General Statutes provides that where a man is married, a will is revoked by subsequent marriage, except in certain instances which are not pertinent here, in other words if a man marries, any will which he had made prior to the time of that marriage is void. Also, Section 29-14 of the General Statutes provides under the law that the share of the surviving spouse shall be all of the property, that is the net estate of the deceased, that is, the surviving spouse or widow, if the intestate is not survived by a child, children or any lineal descendant, that is child or children or granchild of a deceased child or children, the surviving spouse is entitled to all the net estate. Now those are some of the property rights which are incident to the contract of marriage. (f)

"(g) Now we come next to the issue, which is, did Paul F. Ivery have sufficient mental capacity to enter into a marriage contract with Gladys W. Ivery, which is to determine whether Paul F. Ivery had sufficient mental capacity to contract a valid marriage. The test is whether he had the capacity to understand the nature of the contract and the duties and responsibilities it created, and the consequences. Now I have just discussed with you the consequences; therefore the issue is whether Paul F. Ivery on May 12, 1960, had sufficient mental capacity to understand the nature of the marriage contract which he entered into, and the duties and responsibilities it created, and the consequences as to property. (h)"

It is noted that the portion of the charge between (g) and (h) follows immediately the portion of the charge between (e) and (f).

In the portion between (g) and (h), the court instructed the jury that the issue was whether Paul F. Ivery on May 12, 1960, had sufficient mental capacity to understand the nature of the marriage contract when he entered into it, and the duties and responsibilities it created, *and the consequences as to property*, and referred to the fact that he had "just discussed" with the jury "the consequences."

In the portion between (e) and (f) the court refers to "some of the property rights which are incident to the contract of marriage," to wit, the consequences of the marriage contract as to property. One of the consequences referred to is that G.S. 31-5.3 provides that, with certain exceptions, a will is revoked by the subsequent marriage of the maker. Another consequence referred to is that, under the provisions of G.S. 29-14(4), all the net estate of an intestate becomes the property of the surviving spouse if the intestate is not survived by a child, children or any lineal descendant of a deceased child or children or by a parent. Incidentally, G.S. 29-14 became effective July 1, 1960, that is, subsequent to the solemnization of the marriage.

"As to what constitutes mental capacity or incapacity to enter into marriage, it is not possible to lay down any general rule of universal application. . . . Ordinarily, the mental incapacity must relate specifically to the contract of marriage in order to affect it, and if a person entering the marriage relation has sufficient capacity to understand the nature of the contract and the duties and responsibilities which it creates, the marriage will be valid." 35 Am. Jur., Marriage § 18; Annotation: "Mental capacity to marry," 28 A.L.R. 635. ". . . the general rule is that the test is the capacity of the person to understand the special nature of the contract of marriage, and the duties and responsibilities which it entails, which is to be determined from the facts and circumstances of each case." 55 C.J.S., Marriage § 12.

For the purpose of this appeal, it is sufficient to say that knowledge of the provisions of our statutory law relating to the revocation of a will by marriage and relating to the persons who shall succeed to the estate of an intestate is not a prerequisite or necessary element of mental capacity sufficient to contract a valid marriage. In our opinion, the jury might reasonably have understood from the court's (quoted) instructions that Paul F. Ivery, unless he had such knowledge of our statutory law on May 12, 1960, did not then have mental capacity sufficient to contract a valid marriage.

New trial.